# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 20, 2000

## STATE OF TENNESSEE v. JAMES EDWARD COWAN

**Appeal from the Criminal Court for Davidson County**
**No. 98-D-2586     J. Randall Wyatt, Jr., Judge**

---

**No. M1999-02572-CCA-R3-CD - Filed October 27, 2000**

---

Defendant was convicted by a Davidson County jury of attempted first degree murder, attempted especially aggravated robbery, and especially aggravated burglary. At sentencing his conviction for especially aggravated burglary was reduced to aggravated burglary. He was sentenced as a Range II offender to thirty-six years for the Class A felony of attempted first degree murder, sixteen years for the Class B felony of attempted especially aggravated robbery, and eight years for the Class C felony of aggravated burglary. The attempted first degree murder and attempted especially aggravated robbery sentences were run consecutively to each other, and the aggravated burglary sentence ran concurrently, for an effective fifty-two year sentence. In this appeal, defendant makes the following allegations: (1) the trial court erred in refusing to suppress the bullet which was removed from defendant during surgery; (2) the evidence was insufficient to support his conviction for attempted first degree murder; (3) his separate convictions for attempted first degree murder and aggravated burglary violate due process since they were incidental to attempted especially aggravated robbery; and (4) the trial court erred in determining the length and consecutive service of his sentences. Upon our review of the record we conclude the trial court properly admitted the bullet removed from the defendant; the evidence was sufficient to sustain defendant's conviction for attempted first degree murder; there was no due process violation; and defendant was properly sentenced. Thus, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Karl Dean, Public Defender; Jeffrey A. DeVasher (on appeal) and J. Michael Engle (at trial), Assistant Public Defenders, Nashville, Tennessee, for the appellant, James Edward Cowan.

Paul G. Summers, Attorney General and Reporter; Marvin E. Clements, Jr., Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Brett T. Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Defendant was convicted of attempted first degree murder, attempted especially aggravated robbery, and especially aggravated burglary. He was sentenced as a Range II offender to thirty-six years for attempted first degree murder, sixteen years for attempted especially aggravated robbery, and eight years for the reduced charge of aggravated burglary. Counts one and two were run consecutively for an effective sentence of fifty-two years. Defendant alleges: (1) the trial court erred by denying his motion to suppress the bullet seized from the hospital after it had been removed from his arm; (2) the evidence was insufficient to sustain his conviction for attempted first degree murder; (3) his convictions for attempted first degree murder and aggravated burglary violate due process since he was also convicted of attempted especially aggravated robbery; and (4) the trial court erred in determining both the length and consecutive service of his sentences. Upon our review of the record, we affirm the judgment of the trial court.

## FACTS

On June 9, 1998, at approximately 4:00 a.m. the victim and his girlfriend heard gunfire in their duplex, and the shattering of the sliding glass door downstairs. They testified that the gunfire was coming through the ceiling into their bedroom and the bedroom where the victim's three-year-old and five-year-old children were sleeping. Additionally, the victim testified that someone was standing outside of his bedroom window and shooting inside. The victim shoved his girlfriend into the closet, grabbed his .357 revolver, and went to the top of the stairs in an attempt to keep the gunmen from coming up the stairs. One perpetrator was coming up the stairs, and another person was standing at the foot of the stairs. The perpetrator fired at the victim and struck him in the left arm. The victim testified that when the pistol was empty, the man at the bottom of the stairs threw the perpetrator a "big gun." The perpetrator then ran further up the stairs and asked the victim, "do you have any money?" The victim returned fire, stated that he did not have any money, and continually told the perpetrator that his children were in the house. The victim claims the intruders then began to shoot even more.

Once the perpetrator reached the top of the stairs, he and the victim began to wrestle. The victim shot him at least once. The perpetrator eventually fell down the stairs, and the other man grabbed him and helped him exit the premises.

The victim testified that the men were dressed in black and wearing ski masks. However, during the struggle, he was able to ascertain that the perpetrator was black. He further testified that during the struggle, the perpetrator shot him approximately five times in the chest, arm and head. Miraculously, the victim survived.

2

After their arrival at the scene, the police found a .9 mm Ruger in the backyard as well as numerous shell casings on the lower level of the residence. In addition, the victim turned his .357 revolver over to the police.

At 4:40 a.m. the wounded defendant and another man arrived at General Hospital in Nashville. When hospital personnel stated that the police would be contacted, the man accompanying the defendant left the hospital. When police arrived, defendant told them that someone shot him from a car. The location of the alleged shooting as described by the defendant was not the victim's address, and there were no reports of "shots fired" at the location described by defendant.

The defendant had multiple gunshot wounds to his left shoulder, right arm and scrotum. During surgery, a bullet was removed from his arm. The bullet was stored in the pathology department of the hospital and later recovered by Detective Mike Roland.

The bullet removed from the defendant, the victim's .357 revolver, the .9 mm Ruger found in the backyard, and other items found at the scene were examined by the Tennessee Bureau of Investigation. It was determined that the bullet removed from the defendant came from the .9mm pistol recovered from the backyard.

The defense offered no proof at trial.


## SUPPRESSION OF THE BULLET

The defendant argues that the warrantless seizure of the bullet which was surgically removed from his arm was improper. He claims that the seizure did not fall within one of the recognized exceptions to the warrant requirement, nor was it based upon exigent circumstances. The state, on the other hand, contends the defendant had no reasonable expectation of privacy in the "abandoned" bullet.

### (1) Suppression Hearing

Evidence at the suppression hearing indicated that the defendant appeared at General Hospital at 4:40 a.m. with multiple gunshot wounds. He underwent surgery, and the bullet was removed by medical personnel. The bullet was stored at the hospital in accordance with its custom. At no time did the defendant request that he be given the bullet. Subsequently, authorities recovered the bullet from the hospital without a warrant.

The trial court determined that the defendant abandoned the bullet by consenting to the surgery and failing to request that the bullet be returned. Furthermore, the trial court concluded that even if the bullet had not been abandoned, the defendant did not have a reasonable expectation of privacy in the bullet. Thus, defendant's motion to suppress the bullet was denied.

3

## (2) Analysis

### (a) Removal of the Bullet

The Fourth Amendment only limits governmental activity; consequently, evidence secured by private persons, even by illegal means, creates no constitutional violation. Burdeau v. McDowell, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921). A private party acting for a reason independent of a governmental purpose does not implicate the Fourth Amendment. State v. Burroughs, 926 S.W.2d 243, 246 (Tenn. 1996).

We conclude that the removal of the bullet by medical personnel did not implicate the Fourth Amendment. It was not done at the direction of governmental law enforcement, and the removal was done for a reason independent of a governmental purpose. *See* Commonwealth v. Johnson, 727 A.2d 1089 (Penn. 1999) (removal of bullet by medical personnel, not at the direction of law enforcement, does not implicate Fourth Amendment); Commonwealth v. Storella, 35 N.E.2d 348 (Mass. App. Ct. 1978) (same holding as Johnson).

### (b) Procurement of Bullet From Hospital

We now examine whether law enforcement's procurement of the bullet from the hospital violated defendant's Fourth Amendment rights.

Under the Fourth Amendment it is recognized that the application of the constitutional limitations upon governmental intrusion depends upon whether or not the individual has a reasonable expectation of privacy. California v. Ciraolo, 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed. 2d 210 (1986); Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed. 2d 576 (1967) (Harlan, J., concurring); State v. Roode, 643 S.W.2d 651, 652-53 (Tenn. 1982). These cases reflect that in determining what is a constitutionally protected reasonable expectation of privacy, a two-part inquiry is made: (1) whether the person manifested a subjective expectation of privacy in the object of the challenged intrusion; and (2) whether society is willing to recognize that expectation as reasonable or justified. State v. Bowling, 867 S.W.2d 338, 341 (Tenn. Crim. App. 1993) (citations omitted). Where the government violates an expectation of privacy which is both subjectively and reasonably entertained, evidence obtained thereby is not admissible in a criminal prosecution. However, one has no reasonable expectation of privacy in a bullet surgically removed by medical personnel during a customary medical procedure. Johnson, 727 A. 2d at 1098.

In this case the defendant voluntarily submitted himself to the hospital and underwent surgery. The bullet was surgically removed, but not at the direction of law enforcement. It was stored by the hospital in its customary manner. Defendant demonstrated no subjective expectation of privacy in the bullet, nor do we find that society is willing to recognize a reasonable expectation of privacy in a bullet surgically removed under these circumstances. Thus, the motion to suppress was properly overruled.

4

**SUFFICIENCY OF THE EVIDENCE**

The defendant contends the state failed to prove attempted first degree murder by failing to establish that he acted with premeditation. Thus, he argues the evidence, at most, supports attempted second degree murder. He specifically argues that the state failed to demonstrate that he had any motive other than robbery.

**(1) Standard of Review**

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

**(2) Attempted First Degree Murder**

The applicable definition of first degree murder is "[a] premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). Premeditation necessitates "a previously formed design or intent to kill," State v. West, 844 S.W.2d 144, 147 (Tenn. 1992)(citations omitted), and "an act done after the exercise of reflection and judgment . . . [meaning] that the intent to kill must have been formed prior to the act itself." Tenn. Code Ann. § 39-13-202(d). It also requires that the accused be "sufficiently free from excitement and passion as to be capable of premeditation." *Id.* A homicide, once proven, is presumed to be second degree murder, and the state has the burden of proving premeditation to raise the offense to first degree murder. State v. Nesbit, 978 S.W.2d 872, 898 (Tenn. 1998). Although a jury may not engage in speculation, it may infer premeditation from the manner and circumstances of the killing. State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997); State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995).

In order to prove attempted first degree murder, the state must prove that the defendant acted with intent to commit premeditated first degree murder "and the conduct constitutes a substantial step toward commission of the offense." Tenn. Code Ann. § 39-12-101(a)(3).

We find that the jury could have reasonably concluded the defendant intended to murder the victim with premeditation. The victim was shot during a violent home invasion. At trial, both the victim and his girlfriend testified that shots were being fired through the ceiling, up the stairs and through the bedroom window. Furthermore, the victim testified that when the perpetrator ran out of bullets in one gun, he grabbed another weapon and continued to shoot at him. The perpetrator continued to come up the stairs, even after the victim told him he did not have any money and that

his children were asleep in the house. Furthermore, he continued to shoot even after the victim had been wounded.

The defendant claims the motive was robbery. Although a defendant committing a killing in the course of a robbery can be convicted of felony murder without proof of premeditation, the killing could also be a premeditated murder, provided the defendant acted intentionally and with premeditation.[1] Thus, the jury could infer that the defendant intended to kill anyone who got in his way, even if it meant he had to shoot and kill the victim. Thus, we conclude the evidence was sufficient to support the defendant's conviction for attempted first degree murder.

## DUE PROCESS

The defendant contends the trial court erred in allowing convictions for attempted first degree murder and aggravated burglary because they were incidental to attempted especially aggravated robbery. The defendant relies on State v. Anthony, 817 S.W.2d 299 (Tenn. 1991) (holding that a conviction for kidnapping and armed robbery growing out of a single episode could not be sustained where the kidnapping was essentially incidental to the accompanying robbery). In *Anthony* the Supreme Court was concerned that proving one felony, the armed robbery, inherently and necessarily proved the elements of the second felony, kidnapping. *Id.* at 303

The analysis adopted in *Anthony* has not yet been applied by the Supreme Court outside the kidnapping context. *See* State v. Ralph, 6 S.W.3d 251, 256 (Tenn. 1999). We decline to extend its application in this case to separate convictions for attempted first degree murder, aggravated burglary and attempted especially aggravated robbery.

In Ralph the Supreme Court examined the statutes and requisite elements of burglary and theft. *Id.* at 255. The Court found each offense to be narrowly defined by statute and clearly requiring proof of different elements. *Id.* Thus, the court found no due process violation by dual convictions for both burglary and theft. *Id.* at 256.

Likewise, attempted first degree murder, aggravated burglary and attempted especially aggravated robbery are narrowly defined by statute and each contains different elements. Aggravated burglary is a property offense and is completed upon entry into the habitation. Tenn. Code Ann. §

---

[1]Where both premeditated and felony murder are alleged in an indictment, the trial court should instruct the jury to render a verdict as to each count of such an indictment. State v. Cribbs, 967 S.W.2d 773, 787-88 (Tenn. 1998). If the jury returns a verdict of guilt on both counts, the trial court should merge the convictions. *Id.*

39-14-402(a)(1), - 403(a); *see* <u>Ralph</u>, 6 S.W.3d at 255. Attempted first degree murder is a crime against the person, involves an intent to kill, and does not require an attempt to rob. Tenn. Code Ann. § 39-13-202(a)(1). Attempted especially aggravated robbery is a crime against the person which focuses upon the intent to rob, a deadly weapon and serious bodily injury. Tenn. Code Ann. § 39-13-403(a). Any of these offenses can be committed without necessarily committing another.

Accordingly, we conclude there is no due process violation.

## SENTENCING

Defendant challenges the length of his sentences. Specifically, he alleges the trial court erred in concluding there was more than one victim. Tenn. Code Ann. § 40-35-114(3). Defendant also challenges the imposition of consecutive sentences for the offenses of attempted first degree murder and attempted especially aggravated robbery.

### (1) Standard of Review

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. <u>State v. Poole</u>, 945 S.W.2d 93, 96 (Tenn. 1997).

### (2) Trial Court's Findings - Enhancement Factors

The trial court determined that for purposes of enhancement the defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range,[2] and the offense involved more than one victim. Tenn. Code Ann. § 40-35-114(1), (3). These two factors were applied to each of the three counts. Additionally, the trial court concluded that with regard to his attempted first degree murder and aggravated burglary convictions, the defendant's possession and employment of a firearm should be used to enhance his sentence. Tenn. Code Ann. § 40-35-114(9). Furthermore, with regard to his aggravated burglary conviction, the trial court found that the fact that the crime was committed under circumstances in which the potential for bodily injury to a victim was great should serve to enhance the defendant's sentence. Tenn. Code Ann. § 40-35-114(16).

---

[2]The defendant has an extensive prior criminal history including three felony drug convictions, a felony conviction for aggravated riot, and multiple misdemeanor convictions. It appears the parties agreed that the defendant should be sentenced as a Range II offender.

In determining that there were multiple victims, enhancement factor (3), the trial court considered the victim's two children. The trial court found that, "even though the listed victim was Charles Brown, there were little children present," and held "that was a serious situation there that exposed all these people as victims..."

### (3) Analysis - Enhancement Factor (3)

The defendant contends the trial court erroneously concluded the children were "victims" under enhancement factor (3). We must agree. A victim is "a person or entity that is injured, killed, had property stolen, or had property destroyed by the perpetrator of the crime." State v. Raines, 882 S.W.2d 376, 384 (Tenn. Crim. App. 1994). It appears from the record that the children had no physical contact with the defendant during the commission of the crime, nor was any property taken from them. In addition to the children, the defendant's girlfriend was present in the house. Likewise, she had no physical contact with the defendant and could not identify any property as being taken during the intrusion. No one was injured in the altercation other than Brown. Thus, we conclude this enhancement factor should not apply to any of the offenses.

However, we conclude that the trial court's misapplication of this one enhancement factor does not necessitate a reduction of the sentences. See State v. Lavender, 967 S.W.2d 803, 809 (Tenn. 1998). The trial court found additional enhancement factors for each offense. Furthermore, the defendant presented no mitigating evidence. Thus, we conclude no reduction in the defendant's sentence based upon misapplication of this factor is warranted.

### (4) Consecutive Sentencing

Defendant contends the trial court erred in concluding his sentences for attempted first degree murder and attempted especially aggravated robbery should run consecutively for an effective sentence of fifty-two years. The trial court determined that defendant was a professional criminal, had an extensive criminal record, and was a dangerous offender. See Tenn. Code Ann. § 40-35-115(b)(1), (2), and (4).

Defendant challenges the trial court's determination that he was a professional criminal who knowingly devoted his life to criminal acts as a major source of livelihood. Tenn. Code Ann. § 40-35-115(b)(1). Regardless of the propriety of this finding, there was ample basis to impose consecutive sentences.

We conclude that consecutive sentencing is warranted by the appellant's extensive criminal activity. Tenn. Code Ann. § 40-35-115(b)(2). We further conclude the aggregate fifty-two year sentence is "justly deserved in relation to the seriousness of the offense," and is "no greater than that deserved for the offense committed." State v. Lane, 3 S.W.3d 456, 460 (Tenn. 1999).

We also conclude that the trial court correctly determined that the defendant is a dangerous offender. Tenn. Code Ann. § 40-35-115(b)(4). As to this category, there must also be a finding that the sentences are reasonable in relation to the offenses committed, are necessary to protect the public from further criminal acts of the defendant, and are appropriate in relation to general sentencing principles. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). Although the trial court did not make these specific findings, we so find. The defendant entered a dwelling and shot multiple rounds with different weapons, severely injuring the victim and endangering the lives of his girlfriend and small children. Furthermore, he has a history of violent behavior and generally poses a danger to the public.

Accordingly, we conclude that consecutive sentences were proper.

## CONCLUSION

Upon our review of the record, the judgment of the trial court is affirmed in all respects.

_____
JOE G. RILEY, JUDGE

9