# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 27, 2013 Session

## STATE OF TENNESSEE v. LARRY JERELLER ALSTON, KRIS THEOTIS YOUNG, AND JOSHUA EDWARD WEBB

### Appeal from the Criminal Court for Knox County
### Nos. 94647 A, B, & C    Mary Beth Liebowitz, Judge

### No. E2012-00431-CCA-R3-CD - Filed May 30, 2013

In this appeal as of right, the State challenges the Knox County Criminal Court's setting aside the jury verdicts of guilty of especially aggravated kidnapping, aggravated burglary, and possession of a firearm with intent to go armed during the commission of a dangerous felony and ordering dismissal of the charges. Because the trial court erred by setting aside the verdicts and dismissing the charges of especially aggravated kidnapping and aggravated burglary, the jury verdicts are reinstated, and the case is remanded to the trial court for sentencing. Although the trial court erred by dismissing the firearms charge on the grounds named in its order, error in the indictment for that offense nevertheless requires a dismissal of those charges. Finally, the defendants' convictions of aggravated robbery and the sentences that accompany them are affirmed.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed in Part; Reversed and Remanded in Part

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Robert E. Cooper, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney Genera; Randall E. Nichols, District Attorney General; and Kevin Allen, Assistant District Attorney General, for the appellant, State of Tennessee.

Mike Whalen, Knoxville, Tennessee, for the appellee, Joshua E. Webb.

Sherif Guindi, Knoxville, Tennessee, for the appellee, Larry J. Alston.

Robert R. Kurtz (on appeal) and Vanessa Lemons (at trial), Knoxville, Tennessee, for the

appellee, Kris T. Young.

**OPINION**

On the afternoon of April 15, 2010, three armed men confronted the victim, Carolyn Sue Maples, in front of her Knoxville residence and demanded her purse before ordering Ms. Maples inside her house. A neighbor who witnessed the incident telephoned police, and the three defendants were apprehended a short time later just outside Ms. Maples' residence.

At trial, Ashley Dawn Hill testified that on April 15, 2010, at approximately 1:45 p.m., she was sitting on the front porch of her Chicago Avenue residence when she saw two black men with dread locks and a white man with glasses walking down the middle of the street toward the victim's residence. At one point before they reached the victim's residence, the men attempted to stop a car, but the car would not stop. Ms. Hill said that she went inside her house briefly, and when she returned to the porch, she saw the victim walk around her car, which was parked in front of her house, to get in. At that point, the men approached the victim and said, "'Excuse me.'" Ms. Hill looked down momentarily and then heard the victim scream. Ms. Hill testified that when she looked up, she saw one of the black men grab the victim's purse. The victim got out of her car and ran toward her house, "and they followed her into the house." At that point, Ms. Hill telephoned 9-1-1.

Carolyn Sue Maples testified that on April 15, 2010, she lived at 2118 Chicago Avenue with her husband Harvey Hahn, who was in the hospital being treated for throat cancer. On that date, at approximately 1:45 p.m., Ms. Maples went outside to get into her car to go pick up her daughter and grandchild so that they could visit her husband in the hospital. Ms. Maples recalled that when she exited her house, she saw three men, two black and one white, walking toward her. She said that she walked to the car, opened the door, and, just as she began to get in, the "big" black man asked if she knew a particular girl. Ms. Maples responded that she did not and turned to get in the car. She said, "The next thing I know there were guns to my head."

Ms. Maples testified that the two black men pointed guns at her and that one of the men demanded first that she give him her purse and then that she "'get to the house.'" She said that "the big one" took her purse as she got out of the car. The men then "pushed [her] to go open the door to the house." Ms. Maples testified that she was so scared that she had difficulty opening the door. Once inside the house, the men pushed her onto the couch and began ransacking her home. She recalled, "They wanted my money; they wanted my jewelry; they wanted anything I had." She said that the men took $140 from her wallet along with her bank card. "The big one" demanded that she provide her "bank number" so that

they could access her account. Ms. Maples recalled that the white perpetrator had "a sawed-off shotgun . . . stuffed down in his pants," and the two black men had pistols.

As Ms. Maples remained confined to the couch, "[t]he big one" took two flat screen televisions and walked toward the door. At that point, the man said, "'Oh, f***, there's the law'" and then "took off towards the one in the kitchen." When the man ran away, Ms. Maples was able to escape through the open front door. When she got outside, "the lady cop" told her to "[g]o somewhere and . . . get where nobody can see you." She noted that the men had left the house in disarray. She identified all three defendants at trial, designating Mr. Young as "the big one."

Knoxville Police Department ("KPD") Officer Amanda Bunch testified that at approximately 1:41 p.m., she was diverted from another call to respond to Chicago Avenue to investigate a report that "three males force[d] a lady back into her house at gunpoint." Officer Bunch recalled that she deactivated her emergency equipment as she pulled onto Chicago Avenue, parked her car a safe distance from the given address, and proceeded toward the house on foot. She took a position behind a tree and waited for backup to arrive. Officer Bunch testified that two other officers arrived nearly simultaneously to one another and that, at that point, the front door opened and a black male carrying a television set began to exit. From her position behind the tree, Officer Bunch saw the individual drop the television and run back into the house. She said that the other two officers went to the back of the house while she took a closer position in the driveway of the residence. When someone approached the front door a second time, Officer Bunch shouted, "[G]et on the ground." The victim shouted, "[I]t's me," and Officer Bunch motioned for the victim to come into the driveway.

Officer Bunch testified that other officers placed one subject in custody at the back of the house. Officer Dean Ray arrived with his police dog, and officers went to the house and released the dog inside. She said that the dog drove the other two suspects onto the back deck, where they were placed into custody. She handcuffed the white male, identified as Mr. Webb, and performed a search of his person. Officer Bunch testified that she discovered "[t]wo five-dollar bills, a lighter, his wallet, . . . a gold kind of bracelet chain type thing, and . . . a pill bottle." The victim's name was on the pill bottle.

KPD Officer Tim Riddle responded to the call on Chicago Avenue to assist other officers. He said that when he arrived he observed Officer Bunch behind a tree, so he also "took cover next to a tree just in case someone come (sic) out shootin'." From his position, Officer Riddle could see both the front and rear exits of the home. As he looked toward the house, Officer Riddle observed a black male "carrying out some materials." When the officers "began to give verbal commands," the individual dropped what he was

carrying and went back into the house. Shortly thereafter, he saw an elderly, white woman run from the front door and a black male "trying to run out the back door." The black male was apprehended by Officer John Stevens, who had taken a position in the back alley. Officer Riddle radioed for K-9 assistance. The K-9 Officer arrived, warned occupants of the house that the dog was going to be released, and then "a white male and a black male comes out the back door and gives up." Officer Riddle placed the second black male, identified as Mr. Young, into custody.

KPD Officer John Stevens also responded to the call of "a home invasion in progress, that there was three suspects at the time, all armed, and had forced a . . . victim back into her residence on Chicago Avenue." When he arrived, he took a position that allowed him to "observe the rear exit of the residence." Officer Stevens recalled that Mr. Alston was the first to exit, followed quickly by Messrs. Webb and Young. Mr. Alston, he said, cooperated with officers' commands and got down to the ground immediately. Officer Stevens placed Mr. Alston in custody and searched his person. Mr. Alston had $110 in cash and the victim's automatic teller machine ("ATM") card on his person.

KPD Forensic Officer Russ Whitfield took photographs and collected evidence at the Chicago Avenue scene. Among the items he collected were a loaded Ruger pistol, a loaded High Point nine millimeter pistol, and a loaded Stevens .20 gauge pump-action, sawed-off shotgun. All of the weapons were swabbed to collect DNA.

At the conclusion of this proof, the State rested, and the defendants moved the trial court to dismiss the charges of especially aggravated kidnapping and aggravated burglary based upon due process principles as announced in *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991), and its progeny. The trial court reserved ruling on the motion until after the jury rendered its verdicts. The defendants elected to present no proof.

Based upon the proof presented by the State, the jury convicted all of the defendants as charged of especially aggravated kidnapping, aggravated burglary, aggravated robbery, and possession of a firearm with the intent to go armed during the commission of a dangerous felony. Following the jury verdicts, the trial court entered a written order setting aside the jury verdicts and dismissing the charges of especially aggravated kidnapping and aggravated burglary on grounds that they violated due process principles. The trial court later set aside the jury verdicts for possession of a firearm with the intent to go armed during the commission of a dangerous felony and dismissed those charges on grounds that they could not stand in light of the dismissal of the especially aggravated kidnapping and aggravated burglary charges.

In this timely appeal, the State challenges the trial court's order setting aside

the jury verdicts of guilty and dismissing the charges of especially aggravated kidnapping, aggravated burglary, and possession of a firearm with the intent to go armed during the commission of a dangerous felony.

## I.  Jurisdiction

Initially, the defendants contend that this court lacks jurisdiction to consider the State's appeal because "double jeopardy concerns" prohibit a retrial after the entry of a judgment of acquittal.  The State asserts that the rules of appellate procedure specifically provide for a State appeal under the circumstances of this case and that double jeopardy principles do not bar a State appeal in this case because the trial court did not set aside the verdicts because of an insufficiency of the evidence.

American courts have long recognized that the government "cannot appeal in a criminal case without express [legislative] authorization." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568 (1977) (citing *United States v. Wilson*, 420 U.S. 332, 336 (1975); *United States v. Sanges*, 144 U.S. 310 (1892)).  As a result, "[w]hen a statute affords a state or the United States the right to an appeal in a criminal proceeding, the statute will be strictly construed to apply only to the circumstances defined in the statute." *State v. Meeks*, 262 S.W.3d 710, 718 (Tenn. 2008) (citing *Carroll v. United States*, 354 U.S. 394, 400 (1957); *State v. Adler*, 92 S.W.3d 397, 400 (Tenn. 2002)).  As our supreme court explained, at common law the State had no right to appeal in a criminal case under any circumstances. *Meeks*, 262 S.W.3d at 718.  Later, many state legislatures and Congress granted to the prosecution limited rights of appeal via specific constitutional or statutory provisions. *See Sanges*, 144 U.S. at 312 (1892) ("[T]he State has no right to sue out a writ of error upon a judgment in favor of the defendant in a criminal case, except under and in accordance with express statutes, whether that judgment was rendered upon a verdict of acquittal, or upon the determination by the court of a question of law."); *see also Martin Linen Supply Co.*, 430 U.S. at 568; *Wilson*, 420 U.S. at 336.  Even where the right of appeal was granted to the prosecution, courts continued to emphasize that such provisions must be construed or applied narrowly to avoid a general grant of jurisdiction for State appeals. *Meeks,* 262 S.W.3d at 718; *see also Arizona v. Manypenny*, 451 U.S. 232, 246 (1981).  Indeed, "'appeals by the Government in criminal cases are something unusual, exceptional, not favored,' at least in part because they always threaten to offend the policies behind the double-jeopardy prohibition." *Will v. United States*, 389 U.S. 90, 96 (1967) (quoting *Carroll*, 354 U.S. at 400; citing *Fong Foo v. United States*, 369 U.S. 141 (1962)).  "Both prudential and constitutional interests contributed to this tradition.  The need to restrict appeals by the prosecutor reflected a prudential concern that individuals should be free from the harassment and vexation of unbounded litigation by the sovereign." *Manypenny*, 451 U.S. at 246.  When construing the right of the State to appeal in a criminal case, reviewing courts must do so with an

understanding that the granting authority, the legislature, "clearly contemplated . . . that [the prosecution] would be completely unable to secure review of some orders having a substantial effect on its ability to secure criminal convictions." *Will*, 389 U.S. at 98 n. 5.

In this instance, the State seeks an appeal as of right pursuant to Tennessee Rule of Appellate Procedure 3, which provides, in pertinent part, as follows:

> In criminal actions an appeal as of right by the state lies only from an order or judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals: (1) the substantive effect of which results in dismissing an indictment, information, or complaint; (2) *setting aside a verdict of guilty and entering a judgment of acquittal*; (3) arresting judgment; (4) granting or refusing to revoke probation; or (5) remanding a child to the juvenile court. The state may also appeal as of right from a final judgment in a habeas corpus, extradition, post-conviction proceeding, or from an order or judgment entered pursuant to Rule 36, Tennessee Rules of Criminal Procedure.

Tenn. R. App. P. 3(c) (emphasis added). The language of this rule clearly contemplates a State appeal when the trial court sets aside a jury verdict of guilty and enters a judgment of acquittal.

Here, the trial court set aside the jury verdicts of guilty as to the charges of especially aggravated kidnapping and aggravated burglary on grounds that they violated principles of due process. The defendants, despite espousing the opposite position in the trial court, contend that the trial court's ruling was one that the evidence was insufficient to support the verdicts. The State, similarly championing a position opposite that taken in the trial court, contends that the rulings did not constitute a comment on the sufficiency of the convicting evidence. In our view, it is unnecessary to determine whether trial court's ruling amounted to a decision regarding the sufficiency of the convicting evidence because, as we discuss below, the State would be permitted to appeal the ruling regardless.

The defendants assert generally that principles of double jeopardy prohibit a State appeal and the grant of a new trial following the trial court's grant of a judgment of acquittal, but they fail to recognize the important distinction between judgments of acquittal granted before the case has been passed on by the jury and those granted following a jury verdict of guilty.

-6-

To be sure, when the trial court grants a judgment of acquittal after the trial commences but before the jury has rendered a verdict, a State appeal is barred because reversal of the trial court's judgment would subject the defendant to a successive prosecution in violation of the double jeopardy clause. *See Smith v. Massachusetts*, 543 U.S. 462, 467 (2005); *Schiro v. Farley*, 510 U.S. 222, 230 (1994); *Smalis v. Pennsylvania*, 476 U.S. 140, 145 (1986); *Richardson v. United States*, 468 U.S. 317, 325 (1984); *United States v. DiFrancesco*, 449 U.S. 117, 132 (1980); *Sanabria v. United States*, 437 U.S. 54, 64 (1978); *Martin Linen Supply Co.*, 430 U.S. at 573; *United States v. Sisson*, 399 U.S. 267, 290 (1970); *Fong Foo*, 369 U.S. at 143. Indeed, in *Evans v. Michigan*, submitted to this court as supplemental authority by the defendants, the Court reiterated that the prosecution cannot appeal a judgment of acquittal entered prior to the jury's rendering a verdict of guilty. *Evans v. Michigan*, 133 S. Ct. 1069, 1080-81 (2013).

Judgments of acquittal granted following the jury's verdict of guilty, however, are treated differently. The case law "establish[es] that the primary evil to be guarded against is successive prosecutions: 'The prohibition against multiple trials is the controlling constitutional principle.'" *Schiro*, 510 U.S. at 230 (quoting *DiFrancesco*, 449 U.S. at 132). An appeal from a judgment of acquittal granted after the jury verdict does not violate double jeopardy principles because the remedy, should the State's appeal prove meritorious, would not be the grant of a new trial but instead reinstatement of the previously-rendered jury verdict. *Smith*, 543 U.S. at 467; *Martin Linen Supply Co.*, 430 U.S. at 569-70. As the Court explained,

> Our cases have made a single exception to the principle that acquittal by judge precludes reexamination of guilt no less than acquittal by jury: When a jury returns a verdict of guilty and a trial judge (or an appellate court) sets aside that verdict and enters a judgment of acquittal, the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty.

*Smith*, 543 U.S. at 467 (citing *Wilson*, 420 U.S. at 352-53); *see also Martin Linen Supply Co.*, 430 U.S. at 569-70 ("[W]here a Government appeal presents no threat of successive prosecutions, the Double Jeopardy Clause is not offended. Thus a postverdict dismissal of an indictment after a jury rendered a guilty verdict has been held to be appealable . . . because restoration of the guilty verdict, and not a new trial, would necessarily result if the Government prevailed."). The Court noted that "[t]he absence of a threatened second trial mitigates the possibility of governmental jury shopping and substantially reduces the expense and anxiety to be borne by the defendant." *Martin Linen Supply Co.*, 430 U.S. at 570 n. 7. The ruling in *Evans* does not alter the exception so succinctly described in *Smith*; indeed, it

reaffirms it in a footnote. *Evans*, 133 S. Ct. at 1081 n. 9 ("If a court grants a motion to acquit after the jury has convicted, there is no double jeopardy barrier to an appeal by the government from the court's acquittal, because reversal would result in reinstatement of the jury verdict of guilt, not a new trial.").

Thus, even if the trial court's ruling setting aside the verdicts of guilty on due process grounds could be classified as a determination of the sufficiency of the convicting evidence, the State would still be entitled to appeal the ruling because it occurred after the jury had passed on the question of the defendants' guilt or innocence and rendered verdicts of guilty.

The defendants also mistakenly argue that the only remedy available to the State vis-a-vis the trial court's order setting aside the jury verdicts and ordering dismissal of the especially aggravated kidnapping charges is the grant of a new trial. As we will discuss more fully below, the trial court erred not only by setting aside the verdicts and ordering dismissal of the especially aggravated kidnapping charges on due process grounds but also by failing to instruct the jury as provided by *State v. White*, 362 S.W.3d 559 (Tenn. 2012). Because we conclude that the jury instruction error was harmless beyond a reasonable doubt, the appropriate remedy is reinstatement of the especially aggravated kidnapping verdicts. *See State v. Richardson*, 251 S.W.3d 438, 439 (Tenn. 2008), *overruled on other grounds by State v. White*, 362 S.W.3d 559 (Tenn. 2012) (reinstating kidnapping convictions vacated by intermediate appellate court); *State v. Fuller*, 172 S.W.3d 533, 534 (Tenn. 2005), *overruled on other grounds by White*, 362 S.W.3d at 578 (same); *State v. Deatrice Cates*, No. E2006-02553-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Knoxville, Jan. 28, 2008) (reversing trial court's dismissal of two counts of especially aggravated kidnapping and remanding for reinstatement).

Based on the foregoing, the State enjoys the right to appeal, and we have jurisdiction to entertain that appeal.

## II. *Propriety of the Trial Court's Action*

Having concluded that we have jurisdiction of this State appeal, we turn to the propriety of the trial court's order setting aside the jury verdicts of guilty of especially aggravated kidnapping, aggravated burglary, and possession of a firearm with the intent to go armed during the commission of a dangerous felony and the concomitant dismissal of those charges. The State contends that the trial court committed error, and the defendants assert that it did not. We examine each offense in turn.

*A. Especially Aggravated Kidnapping*

At the conclusion of the State's proof, the defendants moved the trial court to dismiss the charges of especially aggravated kidnapping on grounds that the evidence did not establish that the removal and confinement of the victim was more than that necessary to accomplish the aggravated robbery of the victim. The trial court, citing *State v. Cozart*, 54 S.W.3d 242, 247 (Tenn. 2001), *overruled on other grounds by White*, 362 S.W.3d at 578, determined that the motion was premature and concluded that the issue whether a separate kidnapping conviction "could stand under the due process evaluation was an issue to be taken up not by the jury but by the court but only after the jury's verdict." The court took the motion under advisement. After the jury returned verdicts of guilty as charged for all the defendants, the court set aside the jury verdicts and entered an order dismissing the charges of especially aggravated kidnapping, concluding, "The movement into the house was an essential part of the continuing aggravated robbery of the victim, thus it is an uncompleted event until broken by the arrival and announcement of police." The court ruled that due process principles, as described in *State v. Anthony*, and its progeny, mandated setting aside the especially aggravated kidnapping verdicts and entering orders of dismissal.

In *State v. Anthony*, our supreme court, utilizing principles of due process, determined that a period of confinement technically meeting the definition of kidnapping frequently accompanies such crimes as robbery and rape and concluded that a separate kidnapping conviction cannot be supported when "the confinement, movement, or detention [was] essentially incidental to the accompanying felony." *State v. Anthony*, 817 S.W.2d 299, 305 (Tenn. 1991). The decision required reviewing courts to determine "whether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction." *Id.* at 306. The court revisited the *Anthony* ruling several times in the ensuing two decades before finally overruling the case and all its progeny in *White*. *See State v. Osby*, __ S.W.3d ___, No. W2012-00408-CCA-R3-CD, slip op. at 7-10 (Tenn. Crim. App. 2012) (detailing history of *Anthony*).

In *White*, the supreme court held "that whether the evidence, beyond a reasonable doubt, establishes each and every element of kidnapping, as defined by statute, is a question for the jury properly instructed under the law." *White*, 362 S.W.3d at 577. In so holding, the court concluded that "[t]he separate due process test articulated first in *Anthony*, and subsequently refined in *Dixon* and its progeny, is, therefore, no longer necessary to the appellate review of a kidnapping conviction accompanied by a separate felony." *Id.* at 578. Instead, the court held, the jury's finding beyond a reasonable doubt all the elements of kidnapping coupled with the reviewing court's "task . . . of assessing the

sufficiency of the convicting evidence" is sufficient to protect the defendant's due process rights. *Id.*

Although it overruled the line of cases that required a legal, as opposed to a factual due process evaluation, the court retained the requirement that the State establish that the removal or confinement of the victim went beyond that necessary to accomplish the accompanying offense, classifying it as a question of fact to be determined by a jury "properly instructed under the law." *Id.* at 577. Given this holding, the court determined that

> [w]hen jurors are called upon to determine whether the State has proven beyond a reasonable doubt the elements of kidnapping, aggravated kidnapping, or especially aggravated kidnapping, trial courts should specifically require a determination of whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the alternative, is significant enough, standing alone, to support a conviction.

*Id.* at 578. The court determined that the requirement that the removal or confinement be more than essentially incidental to the other offense informs the "definition for the element of the offense requiring that the removal or confinement constitute a substantial interference with the victim's liberty." *Id.* Having thus concluded, the court ruled that, to protect the defendant's due process rights, the jury should be instructed that it must determine that the removal or confinement of the victim was "significant enough, standing alone" to support a conviction of kidnapping before imposing one when an overlapping felony accompanies the kidnapping charge. *Id.* The supreme court also developed a jury instruction to facilitate the jury's determination of whether the removal or confinement was essentially incidental to the accompanying offense. *See id.* at 580-81. The court found that the *White* jury had not been instructed on the "key" element of false imprisonment, that "substantial interference with the victim's liberty" required "a finding . . . that the victim's removal or confinement was not essentially incidental to the accompanying felony offense," and granted White a new trial on the basis of the "instructional error." *Id.*

In this case, tried in 2011 before the filing of *White*, the trial court did not provide the instruction envisioned by our supreme court, despite the defendants' specific request for a similar instruction.[1] Because this case was in the appellate pipeline when the

---

[1]The defendants asked the trial court to provide the following special instruction:

> If you find that the defendants moved Carolyn Maples from the driveway (continued...)

-10-

supreme court issued its opinion in *White*, we will use that ruling to analyze the issue presented. *See Osby*, __ S.W.3d at __, slip op. at 10.

The trial court engaged in the analysis deemed unnecessary by *White* and concluded, based on that line of cases expressly overruled by *White*, that the especially aggravated kidnapping verdicts should be set aside and the charges dismissed. Pursuant to *White*, the trial court, having determined that a question existed whether the removal and confinement of Ms. Maples was sufficient to support a separate conviction of especially aggravated kidnapping, should not have set aside the jury verdicts and dismissed the charges but instead should have submitted the issue to a properly instructed jury. *See Osby*, __ S.W.3d at __, slip op. at 11-12 (explaining that the *White* instruction must be given when the issue is fairly raised by the proof). Consequently, based upon the ruling in *White*, both the action of setting aside the verdicts and ordering dismissal of the charges and the failure to give the *White* instruction were erroneous.

We must next determine whether the error requires that the case be remanded for a new trial or can be classified as harmless beyond a reasonable doubt, in which case the jury verdicts should be reinstated. *See id.*, slip op. at 12 (citing *White*, 362 S.W.3d at 580; *see also id.* n. 20). The proof established that the three defendants accosted the victim in front of her home and demanded her purse at gunpoint. One of the defendants took the victim's purse as she exited her car. At that point, the aggravated robbery *as charged in the indictment* was complete.[2] The defendants' argument that the true object of the robbery was drugs and other items inside the house does not alter the fact that the defendants were charged with aggravated robbery for taking the victim's purse and its contents by the use of a deadly weapon. After they exercised control over the victim's purse, the defendants could have done nothing more and still been guilty of aggravated robbery. Instead, the defendants ordered Ms. Maples into her home, where they set about collecting more items to steal. Under these circumstances, the evidence clearly and overwhelmingly established that the removal of the victim from her driveway and her confinement within the house went far beyond that necessary to accomplish the aggravated robbery.

---

[1](...continued)

> to the interior of her home, you must then first determine if that movement was necessary to accomplish the robbery in this case. If you find that the movement of Ms. Maples was necessary to accomplish the robbery in this case, then you should find the defendants not guilty of the charge of especially aggravated kidnapping and all its lesser included offenses.

[2]The indictment alleged that the defendants "did unlawfully, knowingly, by putting Carolyn S. Maples in fear, take from the person of Carolyn S. Maples, a purse and its contents, said taking accomplished with a deadly weapon."

That the defendants may have intended to take other items from inside the victim's home, including pills, does not alter our analysis. Nor are we persuaded that the aggravated robbery charged in the indictment was not complete because the defendants arguably committed a second, uncharged aggravated robbery while inside the victim's home. In sum, the trial court erred by setting aside the jury verdicts of especially aggravated kidnapping and entering orders of dismissal and by failing to provide a *White* instruction to the jury. Because the instructional error was harmless beyond a reasonable doubt, however, we reinstate the jury's especially aggravated kidnapping verdicts and remand them to the trial court for sentencing.

## B. Aggravated Burglary

As in the case of the especially aggravated kidnapping charges, the defendants asked the trial court to dismiss the charges of aggravated burglary at the conclusion of the State's proof, arguing that "the burglary is part and parcel of the robbery." The trial court, apparently under the mistaken impression that the burglary conviction might have to be merged into the aggravated robbery conviction, reserved ruling on the motion until after the jury rendered its verdicts. In its written order, the trial court ruled, as it had with the verdicts of especially aggravated kidnapping, that principles of due process as described in *Anthony* required setting aside the jury verdicts of aggravated burglary and dismissing the charges because the State failed to establish "a 'clear break'" between the aggravated robbery and the aggravated burglary.

Even before *Anthony* and its progeny were overruled by *White*, their precedent had been expressly limited to those cases involving the propriety of a separate conviction of kidnapping. *See, e.g.*, *State v. Ralph*, 6 S.W.3d 251, 255 (Tenn. 1999) ("[W]e are convinced that the principles of due process offended in *Anthony* by the separate convictions of kidnapping and robbery are not offended by separate convictions for burglary and theft in this case."); *State v. Barney*, 986 S.W.2d 545, 548 (Tenn. 1999), *abrogated on other grounds by State v. Watkins*, 362 S.W.3d 530, 550 (Tenn. 2012) ("[T]he 'essentially incidental' test, as developed in Anthony and its progeny, is not helpful in the context of sexual offenses[.]"); *State v. Cowan*, 46 S.W.3d 227, 234 (Tenn. Crim. App. 2000) ("We decline to extend [*Anthony*'s] application . . . to separate convictions for attempted first degree murder, aggravated burglary and attempted especially aggravated robbery."); *State v. John Brunner*, No. W2008-01444-CCA-R3-CD, slip op. at 11 (Tenn. Crim. App., Jackson, July 17, 2009) (declining to apply *Anthony* to separate convictions of second degree murder and domestic violence); *State v. Floyd Perrow*, No. M2003-00319-CCA-R3-CD, slip op. at 11 (Tenn. Crim. App., Nashville, Jan. 24, 2008) (declining to apply *Anthony* to separate convictions of aggravated burglary, aggravated rape, and aggravated assault); *State v. Reginol L. Waters*, No. M2001-02682-CCA-R3-CD, slip op. at 15 (Tenn. Crim. App., Nashville, Jan. 30, 2003)

-12-

(rejecting defendant's argument that, pursuant to *Anthony*, "the offense of aggravated burglary was essentially incidental to the offenses of aggravated rape and aggravated robbery").

As our supreme court explained in *Anthony*, the rationale for the court's holding was that a period of confinement that satisfies the elements of kidnapping frequently accompanies such crimes as robbery and rape but that due process principles prohibited the imposition of a kidnapping conviction when "the confinement, movement, or detention [was] essentially incidental to the accompanying felony." *Anthony*, 817 S.W.2d at 305. The same danger does not exist between the crimes of aggravated robbery and aggravated burglary. The offenses of aggravated burglary and aggravated robbery "are narrowly defined by statute and each contains different elements." *Cowan*, 46 S.W.3d at 234. Aggravated burglary is a property crime that is complete upon the unauthorized entry into a habitation. *See* T.C.A. § 39-14-402(a)(1); -403(a) (2006); *see also Cowan* 46 S.W.3d at 234. The victim of aggravated burglary need not even be present when the offense is committed. Aggravated robbery as charged, on the other hand, is a crime against the person complete upon the taking of property from another by putting in fear and use of a deadly weapon. *See* T.C.A. § 39-13-401(a); -402(a)(1); *see also Cowan*, 46 S.W.3d at 234. A perpetrator need not make any entry into a habitation to complete the offense of aggravated robbery. Unlike the "modern, broadly-drawn kidnapping statutes" at issue in *Anthony*, there is no danger that the offenses of aggravated burglary or aggravated robbery "could literally overrun several other crimes." *Anthony*, 817 S.W.2d at 303.

Accordingly, no due process issue attends the imposition of separate convictions of aggravated burglary and aggravated robbery. Therefore, the trial court erred by setting aside the jury verdicts of aggravated burglary and dismissing those charges based upon the due process principles announced in *Anthony* and its progeny. Furthermore, because no issue of due process exists, no jury instruction like the one promulgated in *White* was required before the jury could impose convictions of aggravated robbery and aggravated burglary.

The defendants' reliance on *State v. Lowery* and *State v. Black* in support of their contention that convictions of aggravated burglary and aggravated robbery violate principles of double jeopardy is inapt. In *Lowery*, our supreme court ruled that an accused could not be "convicted of both robbery with a deadly weapon under T.C.A. § 39-2-501 (formerly § 39-3901) and of grand larceny under T.C.A. § 39-3-1101 (formerly § 39-4202) based upon a single criminal episode," *State v. Lowery*, 667 S.W.2d 52, 53 (Tenn. 1984), because "larceny is a lesser included offense of robbery," *id.* at 53. Essentially, larceny was an element of robbery. In *Black*, our supreme court affirmed convictions "of armed robbery and . . . assault with intent to commit murder in the second degree" despite that the offenses

"occurred at substantially the same time and in the course of a single 'criminal episode', or 'transaction'" because they were "not identical offenses." *State v. Black*, 524 S.W.2d 913, 920 (Tenn. 1975), *abbrogated by State v. Watkins*, 362 S.W.3d 530, 548-49 (Tenn. 2012). Neither case stood for the proposition, as the defendants contend, that an accused could not be convicted of separate crimes for offenses committed during a single criminal episode. Nothing in these cases suggests that separate convictions of aggravated burglary and aggravated robbery arising out of the same criminal episode violate principles of double jeopardy or any other tenet of the law.

Moreover, neither *Lowery* nor *Black* remains viable precedent in light of our supreme court's ruling in *Watkins*. There, our supreme court rejected all facets of the *Denton* analysis for double jeopardy questions, parts of which were relied on in both *Lowery* and *Black*, and adopted in its place "the *Blockburger* same elements test currently utilized by the federal courts and the vast majority of our sister states." *Watkins*, 362 S.W.3d at 556. Utilizing the *Blockburger* test, separate convictions of aggravated burglary and aggravated robbery do not offend double jeopardy principles because our legislature has clearly "expressed an intent to permit multiple punishment" for these offenses, *id.* at 556, and because "each offense includes an element that the other does not," *id.* at 557.

Because separate convictions of aggravated burglary and aggravated robbery do not violate principles of due process or double jeopardy, the trial court erred by setting aside the jury verdicts of aggravated burglary and dismissing those charges. Those verdicts are reinstated and remanded to the trial court for sentencing.

## C. Firearms Convictions

In its order setting aside the jury verdicts and ordering dismissal of the especially aggravated kidnapping and aggravated burglary charges, the trial court declined to set aside the verdicts of possession of a firearm with the intent to go armed during the commission of a dangerous felony, concluding that "unlawful possession of a weapon is a separate and distinct offense." Later, upon a motion from the defendants, the trial court set aside the jury's verdicts and dismissed the firearms charges after finding that they could not stand in light of the dismissal of the predicate felony of aggravated burglary.

Because we have reversed the trial court's order setting aside the jury verdicts of aggravated burglary and reinstated the verdicts, the trial court's basis for dismissing the firearms charges no longer applies. That being said, we note that the State failed to allege a predicate felony in the indictment for possession of a firearm with the intent to go armed during the commission of a dangerous felony. Although neither party raises the issue, "the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section

-14-

9 of the Tennessee Constitution guarantee to the accused the right to be informed of the nature and cause of the accusation," *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997), and the failure of an indictment to provide constitutionally adequate notice results in a void indictment requiring dismissal. Thus, we examine the issue to determine whether the failure to name a predicate felony in the indictment for possession of a firearm with the intent to go armed during the commission of a dangerous felony results in a void indictment, thereby rising to the level of plain error.

Before an error may be recognized as plain, it "must be 'plain' and it must affect a 'substantial right' of the accused." *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). Authority to correct an otherwise "forfeited error" lies strictly "within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Olano*, 507 U.S. 725, 732 (1993) (citations omitted).

In *State v. Smith*, our supreme court adopted *Adkisson*'s five-factor test for determining whether an error should be recognized as plain:

> (a) the record must clearly establish what occurred in the trial court;
>
> (b) a clear and unequivocal rule of law must have been breached;
>
> (c) a substantial right of the accused must have been adversely affected;
>
> (d) the accused did not waive the issue for tactical reasons; and
>
> (e) consideration of the error is "necessary to do substantial justice."

*Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting *Adkisson*, 899 S.W.2d at 641-42). "[A]ll five factors must be established by the record before this court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.* at 283.

As a general rule, "an indictment is valid if it provides sufficient information (1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." *Id.* (citing *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991);

-15-

*VanArsdall v. State*, 919 S.W.2d 626, 630 (Tenn. Crim. App. 1995); *State v. Smith*, 612 S.W.2d 493, 497 (Tenn. Crim. App. 1980)). Tennessee Code Annotated section 40-30-202 provides:

> The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment. In no case are the words "force and arms" or "contrary to the form of the statute" necessary.

T.C.A. § 40-30-202 (2006). "[T]he touchstone for constitutionality is adequate notice to the accused." *Hill*, 954 S.W.2d at 729

The indictment in this case alleged that the defendants possessed a firearm with the intent to go armed during the commission of a dangerous felony but did not allege any of the enumerated dangerous felonies in Code section 39-17-1324. *See* T.C.A. § 39-17-1324(i)(1). The statute requires that the underlying dangerous felony be included as a separate count in the same indictment, *see id.* § 39-17-1324(d) ("A violation of subsection (a) or (b) is a specific and separate offense, which shall be pled in a separate count of the indictment or presentment and tried before the same jury and at the same time as the dangerous felony."), but it is silent on whether the predicate dangerous felony must be named in the count charging a violation of Code section 39-17-1324. We believe that, to satisfy the requirements of *Hill* and Code section 40-30-202 in this case, it must.

In *State v. Michael L. Powell and Randall S. Horne*, this court, citing *State v. Christopher Ivory Williams*, noted that the State's failure to allege a predicate felony in an indictment for a violation of Code section 39-17-1324 "present[ed] a close question" but ultimately concluded that it was "not necessary to determine whether the indictment was adequate to charge the firearms offenses" given other issues attendant to that conviction. *State v. Michael L. Powell and Randall S. Horne*, No. E2011-00155-CCA-R3-CD, slip op. at 18 (Tenn. Crim. App., Knoxville, May 10, 2012). In *Christopher Ivory Williams*, this court addressed Williams' claim "that because the felony murder count did not specify the underlying felony, it failed to place him on notice of the appropriate mens rea for the underlying offense and failed to fulfill the requirements set out in *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997)." *State v. Christopher Ivory Williams*, No. W2009-01638-CCA-R3-CD, slip op. at 9 (Tenn. Crim. App., Jackson, May 9, 2011). We observed that although "the State intended to prove that the killing was committed in the perpetration of kidnapping or robbery . . . neither of these underlying offenses were specifically stated in the felony murder

-16-

count of the indictment." *Id.*, slip op. at 12. Noting that "the underlying felonies listed in section 39-13-202(a) have differing mens rea" and that "[p]roof of the intent to commit the underlying felony, and at what point it existed, [are] question[s] of fact to be decided by the jury after consideration of all the facts and circumstances," we concluded that the failure to include a predicate felony in the felony murder indictment "failed to provide Williams with notice of the underlying offense and its mens rea, which resulted in an invalid indictment and precluded a lawful felony murder conviction." *Id.*

Generally, an indictment for a violation of Code section 39-17-1324 that does not name the underlying dangerous felony does not provide the defendant with adequate notice of the crime charged. This is so even when the indictment, as does the one in this case, tracks the statutory language of Code section 39-17-1324 and names the statute itself. These statutory references are insufficient because Code section 39-17-1324 provides 11 options for dangerous felonies that would support conviction. The failure of the indictment to name the underlying dangerous felony leaves the defendant with inadequate notice of the charges against him. Only "'where the constitutional and statutory requirements outlined in *Hill* are met," will "'an indictment that cites the pertinent statute and uses its language" be deemed "sufficient to support a conviction.'" *State v. Carter*, 988 S.W.2d 145, 149 (Tenn. 1999) (quoting *State v. Ruff*, 978 S.W.2d 95, 100 (Tenn. 1998)).

That the charge of possession of a firearm with the intent to go armed during the commission of a dangerous felony was part of a four-count indictment that included the charge of aggravated burglary that the State intended to serve as the predicate felony does not save that count in this case. "Each count must be a complete indictment within itself, charging all the facts and circumstances that make the crime." *State v. Lea*, 41 Tenn. 175, 177-78 (Tenn. 1860). Indeed, for purposes of protection against double jeopardy, one of the concerns addressed by the *Hill* requirements, the Supreme Court has held that "[e]ach count in an indictment is regarded as if it was a separate indictment." *Dunn v. United States*, 284 U.S. 390, 393 (1932). Only "if it is reasonably clear from the averments of the second count that this is connected with and a part of the preceding count by the use of the language therein" will "such a count . . . be considered good." *State v. Youngblood*, 287 S.W.2d 89, 91 (Tenn. 1956); *see also State v. Cureton*, 38 S.W.3d 64, 82 (Tenn. Crim. App. 2000) (holding, post-*Hill*, that where all counts in an indictment referred to the same victim, the same offense date, and were related to each other, the counts could be read together for purposes of providing notice to the defendant); *State v. James Ruben Conyers*, No. M2002-01007-CCA-R3-CD, slip op. at 19 (Tenn. Crim. App., Nashville, Sept. 5, 2003) (holding that a count charging attempted first degree murder that was otherwise invalid for failure to name a victim could be read together with the other counts of the indictment to supply the name of the victim because the defendant was charged via a single-page indictment with three offenses committed against the same victim on the same date); *State*

*v. Joseph and Evangeline Combs*, Nos. E2000-02801-CCA-R3-CD, E2000-02800-CCA-R3-CD (Tenn. Crim. App., Knoxville, Sept. 25, 2002).

In this case, the first three counts of the indictment charging especially aggravated kidnapping, aggravated robbery, and aggravated burglary appear on the first page of the indictment, and the fourth count charging possession of a firearm with the intent to go armed during the commission of a dangerous felony appears alone on a second page. Nothing in the fourth count connects it specifically to the aggravated burglary or suggests that aggravated burglary, as opposed to especially aggravated kidnapping, serves as the predicate felony. Pursuant to Code section 39-17-1324, either felony could have served as the predicate for the firearm offense. Under these circumstances, the separate counts of the indictment cannot be read together to save the fatally defective omission in count four. As a result, we affirm the trial court's dismissal of the defendants' charges of possession of a firearm with the intent to go armed during the commission of a dangerous felony on grounds different than those relied on by the trial court.

## III. Conclusion

The trial court erred by setting aside the jury verdicts of especially aggravated kidnapping and aggravated burglary and dismissing those charges. Thus, the judgment of the trial court is reversed, the jury verdicts are reinstated, and the case is remanded for sentencing. The trial court also erred by dismissing the charges of possession of a firearm with the intent to go armed during the commission of a dangerous felony on the grounds stated in its order. Because, however, the failure of the indictment for that offense to specify the predicate dangerous felony rendered that count of the indictment fatally defective, we affirm the trial court's dismissal of the charges of possession of a firearm with the intent to go armed during the commission of a dangerous felony. The defendants do not challenge their convictions of aggravated robbery, and, as such, those convictions, and the sentences that accompany them, are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE