# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 8, 2013

## STATE OF TENNESSEE v. WESLEY DAWONE COLEMAN

**Appeal from the Circuit Court for Obion County**
**No. CC-11-CR-100     William B. Acree, Jr., Judge**

---

### No.  W2012-00880-CCA-R3-CD  - Filed June 10, 2013

---

Appellant, Wesley Dawone Coleman, was indicted by the Obion County Grand Jury for aggravated burglary, theft of property valued at over $500, and evading arrest.  After a jury trial, Appellant was convicted of theft of property valued at over $500, aggravated burglary, and evading arrest.  As a result of the convictions, Appellant received an effective sentence of ten years.  Appellant appeals, challenging the sufficiency of the evidence for the theft and aggravated burglary convictions as well as his sentence.  After a review of the record and applicable authorities, we conclude that the evidence was sufficient to support the convictions and that the trial court did not abuse its discretion in sentencing Appellant as a Range II, multiple offender, to ten years in incarceration.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Joseph P. Atnip, District Public Defender and Kate L. Moore, Assistant District Public Defender, Dresden, Tennessee, for the appellant, Wesley Dawone Coleman..

Robert E. Cooper, Jr., Attorney General and Reporter, Sophia S. Lee, Assistant Attorney General; Thomas A. Thomas, District Attorney General, and Heard B. Critchlow, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

On May 30, 2011, Todd and Amy Petty and their four-year-old daughter were asleep in their home in Union City, Tennessee. They were awakened at around 3:21 a.m. by their home security system alarm. Mr. and Mrs. Petty jumped out of bed, leaving their daughter asleep. As Mr. Petty approached the bedroom door he heard a loud crash. He waited until the noise subsided before exiting the bedroom. When he walked around the corner, he discovered that the laundry room doors were burst open and lying on the floor. He entered the laundry room and could see that the back door to the house was wide open and there was broken glass on the floor. Mr. Petty could tell that the perpetrator used a brick to break the glass frame of the back door before reaching inside to unlock the door.

The alarm company notified the Pettys by telephone and the police were on the scene within two minutes. Prior to the arrival of the police, Mr. and Mrs. Petty took a preliminary look around the house. They noted that Mrs. Petty's purse was missing. The purse contained a set of car keys, house keys, a cell phone, and her wallet. The wallet contained some cash and credit cards. They also discovered that their daughter's iPod and a couch cushion were missing. The total value of the stolen items was estimated to be over $500.

Officer Wright of the Union City Police Department responded to the call from dispatch. He observed the broken back door glass and the brick that was presumably used to break the door. When he arrived, Mr. Petty recalled that there was an application on his wife's phone called "Find My iPhone." Mr. Petty was able to use his computer to track the phone's location to a general vicinity of Division and Waddell Street. The police were able to dispatch officers to that location. When the police were dispatched to the scene they established a perimeter on the block.

Appellant, a possible suspect, was seen running in between nearby houses. Officer David Jones was in the area near Waddell Street establishing a perimeter when he saw Appellant running. When Appellant was ordered to stop he spun around and ran in the opposite direction. Appellant was chased by an officer in a vehicle and again ordered to stop. Eventually, Appellant was apprehended five blocks away from the Petty residence. When Appellant was apprehended, a pink iPod cover was found in the back, right pocket of his pants. Some of the items stolen from the residence were located at 411 Waddell Street in the grass beside a bird bath and some of the items were located on the steps leading to the back door of 415 Waddell Street.

-2-

When Appellant was arrested, Officer Wright observed glass particles on the toe and sole area of Appellant's boots. Appellant was apprehended twenty-eight minutes after the break-in at the Petty residence.

Appellant was indicted by the Obion County Grand Jury with aggravated burglary, theft of property valued at over $500, and evading arrest. At trial, Appellant took the stand in his own defense. Appellant claimed that he was at a club on May 29, 2011 when he got "jumped." Afterwards, he was jogging near a tire store when a police officer walked past him. A second police officer shined a flashlight at him. Appellant did not pay attention to the officers while he was jogging. A third police officer started to follow Appellant in a patrol car. This officer ordered Appellant to the ground. Appellant admitted that at this point, he started running toward his girlfriend's house because he was scared. Appellant also stated that once he realized the officers wanted to talk to him, he stopped running. Appellant denied running between two houses on Waddell Street.

Appellant explained that the pink cover that was found in his back pocket was from an iPhone he bought from a man named Tracy who worked at Wendy's. He did not know Tracy's name and claimed that Tracy had moved away from Union City. Appellant testified that he paid twenty dollars for the phone even though Tracy wanted $100.

Appellant claimed that he had the pink cover for about three weeks prior to his arrest. The cover was for a Verizon touch screen cell phone. Appellant testified that he sold this phone about a week prior to his arrest to a "guy from out of town" for $60. Appellant's girlfriend removed the cover and put it in his pocket. Appellant forgot about the cover when he folded his pants up.

During testimony, Appellant acknowledged that the iPod is shorter than an iPhone but that the cover could be used for an iPhone. He kept the cover hoping to sell it to a woman. Appellant explained that it was a coincidence that he was found in possession of a pink iPod cover in close proximity and time to the burglary of the residence of Mr. and Mrs. Petty.

At the conclusion of the jury trial, Appellant was convicted of all three charges. The matter proceeded to a sentencing hearing. At the sentencing hearing, the trial court determined that Appellant was a Range II, multiple offender with four prior felony convictions. The presentence report indicated that Appellant had been on probation in the past but had the probation revoked. Appellant had additional prior convictions that did not contribute to his offender status. Appellant dropped out of school in the tenth grade and had worked most recently at Wendy's. Appellant also testified that he had four children. The children all lived with their mothers.

The trial court sentenced Appellant to ten years in incarceration for the aggravated burglary conviction, four years for the theft of property conviction, and eleven months and twenty-nine days for the evading arrest conviction. The trial court ordered the sentences to be served concurrently. The trial court determined that Appellant had a previous history of criminal convictions in addition to those necessary to establish the appropriate range, that the offense involved more than one victim, that Appellant had a past failure to comply with the conditions of a sentence that involved release into the community, and that Appellant was on supervised release at the time he committed the offenses. The trial court also determined that measures less restrictive than confinement had been applied unsuccessfully to Appellant, noting past failures at probation. Further, the trial court stated that confinement was necessary to avoid depreciating the seriousness of the offense.

Appellant filed a timely motion for new trial. It was denied by the trial court. Appellant perfected this appeal, challenging the sufficiency of the evidence with respect to his aggravated burglary and theft convictions as well as his sentence.

*Analysis*

On appeal, Appellant complains that the evidence is insufficient to support his convictions for aggravated burglary and theft of property over $500. Specifically, he insists that he "was just in the wrong place at the wrong time" and that the evidence was not sufficient to show that he committed the crimes. He does not challenge his conviction for evading arrest. The State, on the other hand, insists that the evidence was sufficient to support the convictions.

To begin our analysis, we note that when a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally deemed with a presumption of innocence, the verdict of guilty removes this presumption and replaces it with one of guilt. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.*

The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In making this decision, we are to accord the State "the strongest legitimate view of the

evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proved, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). As such, all reasonable inferences from evidence are to be drawn in favor of the State. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *See Tuggle*, 639 S.W.2d at 914.

Burglary is committed when a person "without the effective consent of the property owner . . . [e]nters a building other than a habitation . . . not open to the public, with intent to commit a felony, theft or assault." T.C.A. § 39-14-402(a). Aggravated burglary is the burglary of a habitation. T.C.A. § 39-14-403(a). "Aggravated burglary is a property offense and is completed upon entry into the habitation." *State v. Cowan*, 46 S.W.3d 227, 234 (Tenn. Crim. App. 2000) (citing T.C.A. § 39-14-402(a)(1), -403(a); *State v. Ralph*, 6 S.W.3d 251, 255 (Tenn. 1999)). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103.

The evidence, in a light most favorable to the State, establishes that Appellant entered the home of Todd and Amy Petty by throwing a brick through the back door, breaking the glass, and unlocking the door. Once inside, Appellant stole Mrs. Petty's purse containing her wallet, phone, and keys along with their child's iPod and a couch pillow. Mr. Petty heard the alarm go off, got up, inspected the house, and noticed that there had been an intruder. When Appellant was apprehended nearby twenty-eight minutes later, he had glass in the toe and sole of his boots and a pink iPod case matching the one stolen in his back pocket. Other items of stolen property were found near the area where Appellant fled from police. There is ample evidence that Appellant entered the habitation with the intent to steal what he could. As stated above, the offense of aggravated burglary is completed upon entry into the

habitation. *Cowan*, 46 S.W.3d at 234. Moreover, there was testimony from the victim that the value of the items was well over $500 and Appellant did not have permission to take them. The jury heard Appellant's testimony, compared it to that of the victim's and the police, and clearly rejected Appellant's theory. We are not permitted to second-guess the jury's credibility determination. *Pruett*, 788 S.W.2d at 561. Appellant is not entitled to relief on this issue.

*Sentencing*

Next, Appellant complains that his sentence is excessive and that the trial court erred in denying an alternative sentence. The State, on the other hand, argues that the trial court properly sentenced Appellant to an effective ten-year sentence.

Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *See State v. Bise*, 380 S.W.3d 682, at 707 (Tenn. 2012).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Bise*, 380 S.W.3d at 705 n. 41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, under *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. In fact "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the

sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706.

In the case herein, the trial court placed the reasons for the sentence on the record during the sentencing hearing. The sentencing range for a Range II, Class C felony is six to ten years. The sentencing range for a Range II, Class E felony is two to four years. Appellant's sentences are within the appropriate ranges, and the record demonstrates that the trial court complied with the purposes and principles listed in the statute. Moreover, Appellant's criminal history evinces a repeated pattern of the inability to comply with conditions involving release into the community. Thus, the trial court did not abuse its discretion in denying an alternative sentence. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE