# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 6, 2013

## STATE OF TENNESSEE v. JAMES JOHNSON A.K.A. GUY BONNER

**Direct Appeal from the Criminal Court for Shelby County**
**No. 11-05295     James C. Beasley, Jr., Judge**

---

**No. W2012-02280-CCA-R3-CD - Filed December 27, 2013**

---

A Shelby County Grand Jury returned an indictment against Defendant, James Johnson a.k.a. Guy Bonner, charging him with aggravated burglary, theft of property more than $500 but less than $1,000, and resisting arrest.  Following a jury trial, Defendant was convicted of aggravated burglary, theft of property less than $500, and resisting arrest.  The trial court imposed a sentence of 11 months, 29 days each for the theft conviction and the resisting arrest conviction and fifteen years as a persistent offender for aggravated burglary.  The trial court ordered the sentences to be served concurrently to each other but consecutively to the sentences in unrelated cases.  On appeal, Defendant argues that the evidence was insufficient to support his convictions and that the State failed to give proper notice of its intent to seek enhanced punishment. After a thorough review of the record, we affirm defendant's convictions for aggravated burglary, theft over $500, and resisting arrest.  However, we remand the case for entry of a corrected judgment showing a sentence of six months, concurrent with the sentences for aggravated burglary and theft over $500, for the Class B misdemeanor of resisting arrest.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed; Remanded for Entry of a Corrected Judgment**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Stephen C. Bush, District Public Defender; Tony N. Brayton, Assistant Public Defender; and Rusty White, Assistant Public Defender; Memphis, Tennessee, for the appellant, James Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Kate Edmands, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

On the morning of April 7, 2011, Dedrick Johnson left his home located at 178 Kirk Avenue. He secured the residence by locking the doors and activating the alarm system. Some time later that morning while he was at work Mr. Johnson received a call from the alarm company indicating that the alarm at his house was going off. The alarm company also notified police. Mr. Johnson left work and drove home which took approximately thirty to forty-five minutes. When he arrived at the house police were on the scene, and he saw Defendant who had already been taken into custody. Police retrieved Mr. Johnson's watch, his ring, and his daughter's necklace from Defendant's pockets and returned them to Mr. Johnson. Mr. Johnson testified that the items had been inside the house on top of the microwave. He estimated the value of the items to be $200 to $300.

Mr. Johnson identified the point of entry into the house to be a side window leading to the bathroom. He noted that the glass was broken out of the window, and there was a board propped up against the side of the house near the window. Mr. Johnson testified that there was also damage to the interior of his home. There were shards of glass in the bathroom, and a towel rod and shower curtain rod were broken. Mr. Johnson testified that the key pad and motion detector for the alarm system were pulled from the wall, and it appeared that the side door had been kicked out from the inside. He noted that some leftover Chinese food from the refrigerator had been eaten, and several drawers were pulled out and left open. Mr. Johnson estimated the cost to repair the damages to his house to be at least $200. He said that as a result of the burglary, he and his family, which included his wife and three young children, moved from the residence.

Officer Thomas Avery of the Memphis Police Department testified that he was patrolling the area of Kirk Avenue on April 7, 2011, when he was flagged down by a local resident who indicated that someone was breaking into a house beside of the Rock of Ages Church. The house was located at 178 Kirk Avenue. When he arrived on the scene, he noticed a plywood board propped up against a small window that was "raised higher than most windows off the ground." Officer Avery walked up to the window which appeared to be where someone had gained entry to the house. He walked around to the back of the house which was still secure.

Officer Avery walked to a door on the same side of the house as the plywood board and pulled on the opened outer security door. He also noticed some damage to the door frame. Officer Avery then pulled out his weapon and reached for the inner wooden door. As he reached to turn the door knob to open the interior door someone else was turning the knob from the inside. When the door opened Defendant was standing on the other side. At that point Officer Avery was still standing in the grass outside of the door, and Defendant was standing inside the house.

Officer Avery informed Defendant was he was responding to a burglary alarm at the house, and Defendant indicated that he was the homeowner. When Officer Avery asked Defendant the homeowner's name, Defendant did not give the correct name. He also gave a false name for his own name. Officer Avery then asked Defendant the address of the residence, and Defendant became nervous. Defendant backed up into the house, and Officer Avery grabbed his shirt and informed him that he was under arrest. Defendant continued pulling away from Officer Avery, and Officer Avery pulled Defendant out of the house. Officer Avery pinned Defendant against the wall of the house, but Defendant continued to struggle. Although Defendant was unarmed, Officer Avery could not re-holster his gun because he was struggling with Defendant. At that point, Officer Marcus Tucker had arrived and attempted to assist Officer Avery. The two officers attempted to take Defendant into custody; however, he began running toward the back of the house dragging the officers with him. At some point during the struggle Defendant's shirt came off. Officer Avery testified:

> Well, basically I was left holding the Defendant's shirt kind of on my knees at the back of the house around the corner from where he comes out of the door and, my partner who is behind him and ends up on top of me at an angle where his shoulder went into the ground.

After Defendant was taken to the ground, he would not comply with Officer's Avery command to place his hands behind his back. Defendant was eventually handcuffed, and Officer Avery searched his pants pockets and found a gold and silver watch, a ring, and a pendant necklace. The items were identified by the homeowner and returned to him. Defendant was then transported from the scene by ambulance due to some injuries that he had received which were consistent with wounds from a sharp jagged object such as glass.

Defendant did not have any identification and told Officer Avery that his name was James Johnson. Officer Avery later learned that Defendant also went by other aliases such as: Guy Harper, Dewayne Bonner, Jerry Hawkins, Michael Harper, Jerry Dewayne Hawkins, James Harver, Sean Masters, and Michael Watts. Officer Avery testified that Defendant's driver's license number and picture were later found by computer and bore the name Guyoka Bonner.

Officer Marcus Tucker testified that he responded to a residential alarm at 178 Kirk Avenue. When he arrived on the scene, Officer Avery was standing at the door of the residence with his gun un-holstered talking with Defendant who was standing in the doorway. Officer Tucker heard Officer Avery ask Defendant several times to come out of the residence and down the stairs, but Defendant did not comply. He saw Officer Avery grab Defendant by the shirt and pull him down toward the ground. It appeared to Officer Tucker that Defendant was reaching for Officer Avery's gun. Officer Tucker testified that he and Officer Avery then began struggling with Defendant. He said:

> We tried to get him to put his hands behind his back; get him detained. He wouldn't do it, he began pushing and we began pulling and after that we just began wrestling around to the rear of the house. He was resisting, would not put his arms or put his hands behind his back.
>
> Officer Avery still couldn't holster his weapon at that time. We [were] still struggling trying to get his hands behind his back just to get him cuffed and detained.
>
> Like I said, he kept resisting; kept pushing; fighting; would not put his arms, put his hands behind his back; struggled to the back of the house at which I grabbed one of his arms, once - it was his right arm, with my left arm; tried to tackle him, take him down.
>
> We finally got him to the ground and still asking him, telling him to put his hands behind his back, which he would not do. Kept rolling around and finally we got him on the ground and was able to, excuse me, we was able to get him on the ground and keep him from wrestling and struggling with us, still wouldn't put his hands behind his back so we pinned him down.
>
> I had his arm and I got one of his arms back behind his back and he was still rolling trying to keep us from putting the cuffs on him, and at that time rolled over.
>
> Another partner came from the other side of the house, Avery's partner, and at that point in time we [were] finally able to get his arms behind him and get him cuffed.

Officer Tucker strained a muscle in his left shoulder while attempting to arrest Defendant.

**II. Analysis**

*Sufficiency of the Evidence*

Defendant challenges the sufficiency of the evidence for his convictions of aggravated burglary, theft of property under $500, and resisting arrest. When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, and the weight and value to be given the evidence as well as all factual issues raised by the evidence. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Nor may this Court reweigh or re-evaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. *Id*. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of [the] evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

Burglary is committed when a person "without the effective consent of the property owner . . . [e]nters a building other than a habitation . . . not open to the public, with intent to commit a felony, theft or assault." T.C.A. § 39-14-402(a). Aggravated burglary is the burglary of a habitation. T.C.A. § 39-14-403(a). "Aggravated burglary is a property offense and is completed upon entry into the habitation." *State v. Cowan*, 46 S.W.3d 227, 234 (Tenn. Crim. App. 2000) (citing T.C.A. § 39-14-402(a)(1), -403(a); *State v. Ralph*, 6 S.W.3d 251, 255 (Tenn. 1999)).

To support Defendant's conviction for theft of property less than $500, the State was required to prove that Defendant violated Tenn. Code Ann. § 39-16-402, which states: "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over property without the owner's effective consent." Tenn. Code Ann. § 39-14-103.

Concerning the offense of resisting arrest, Tenn. Code Ann. § 39-16-602(a) provides:

It is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer, or anyone acting in a law

enforcement officer's presence and at such officer's direction, from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another.

Force is defined as "compulsion by the use of physical power or violence and shall be broadly construed to accomplish the purposes of this title." Tenn. Code Ann. § 39-11-106(a)(12). The offense of resisting arrest is a Class B misdemeanor unless a defendant uses a deadly weapon in which the offense is a Class A misdemeanor. Tenn. Code Ann. § 39-16-602(d).

Viewing the evidence in a light most favorable to the State, the proof showed that Defendant entered the home of Dedrick Johnson on April 7, 2011, without Mr. Johnson's consent and took Mr. Johnson's watch, ring, and his daughter's pendant necklace. Mr. Johnson estimated the value of the items to be approximately $200 to $300. Mr. Johnson noted that when he left his house on the morning of April 7, 2011, he secured the residence by locking the doors and activating the alarm system. Later that morning Mr. Johnson received a call that the alarm at his house was going off. He then left work and drove back home. When he arrived police were on the scene, and Defendant had been taken into custody. Mr. Johnson identified his watch, ring, and his daughter's necklace that police had retrieved from Defendant's pants pocket. Mr. Johnson also identified the point of entry into his house to be a side window leading to the bathroom. The glass was broken out of the window, and there was a board propped up against the house near the window. Mr. Johnson noted that the key pad and motion detector for the alarm system had been pulled from the wall.

Officer Thomas Avery was flagged down by a local resident on April 7, 2011, who indicated that someone was breaking into a house beside of the Rock of Ages Church. When he arrived on the scene Officer Avery noticed a plywood board propped up against a small window which appeared to be where someone gained entry into Mr. Johnson's residence. Officer Avery walked up to a door on the same side of the house as the plywood board and opened the security door and pulled on the inner wooden door. As he turned the knob to open the door someone else was turning the knob from the inside. When the door opened Defendant was standing on the other side inside the house.

When Officer Avery informed Defendant that he was there responding to a burglary call, Defendant initially said that he was the homeowner; however, Officer Avery began asking Defendant questions, and Defendant attempted to back up into the house. Officer Avery grabbed Defendant's shirt and informed him that he was under arrest.

Defendant continued pulling away from Officer Avery, and Officer Avery eventually pulled Defendant out of the house. Officer Avery pinned Defendant against the wall but he continued to struggle with the officer. Officer Avery was unable to re-holster his weapon due

to the struggle with Defendant. Officer Marcus Tucker arrived on the scene and attempted to assist Officer Avery with arresting Defendant. However, Defendant began running toward the back of the house dragging Officers Avery and Tucker with him. At some point during the struggle Defendant's shirt came off. Concerning the struggle Officer Tucker noted that Defendant "kept resisting; kept pushing; fighting; would not put his arms, put his hands behind his back; struggled to the back of the house at which I grabbed one of his arms, once - it was his right arm, with my left arm; tried to tackle him, take him down." Officers Avery and Tucker eventually put Defendant on the ground with Officer Tucker falling on top of Officer Avery, injuring Officer Tucker's left shoulder. After Defendant was taken to the ground, he still would not comply with the Officer Avery's command to place his hands behind his back, and he "kept rolling around." Defendant was eventually handcuffed and taken into custody.

Based on our review of the evidence, we conclude that the evidence was sufficient to support beyond a reasonable doubt Defendant's convictions for aggravated burglary, theft of property less than $500, and resisting arrest. Defendant is not entitled to relief on this issue.

*Notice of Enhanced Punishment*

Defendant argues that the State failed to give him notice of its intention to seek enhanced punishment for a felony conviction as a multiple, persistent, or career offender. Pursuant to Tennessee Code Annotated section 40-35-202(a):

> If the district attorney general believes that a defendant should be sentenced as a multiple offender, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea; provided, that notice may be waived by the defendant in writing with the consent of the district attorney general and the court accepting the plea.

*See also* Tenn. R. Crim. P. 12.3 which states:

> If the district attorney general intends to seek an enhanced punishment as a multiple, persistent, or career offender, the district attorney general shall file notice of this intention not less than ten (10) days before trial. If the notice is untimely, the trial judge shall grant the defendant, on motion, a reasonable continuance of the trial.

If a notice of intent to seek enhanced punishment is late-filed or is timely filed but defective, a defendant must show prejudice before the notice will be rendered ineffective. *See*

*State v. Stephenson*, 752 S.W.2d 80, 81 (Tenn. 1988); *State v. Debro*, 787 S.W.2d 932, 933-34 (Tenn. Crim. App. 1989). In *Stephenson*, the Supreme Court held:

> We are of the opinion that the fact the notice is not filed until the date trial begins does not render the notice ineffective in the absence of some showing of prejudice on the part of the accused, particularly where defense counsel does not move for a continuance or postponement of the trial as he is clearly authorized to do under Rule 12.3(a). In the absence of a motion for continuance, in our opinion, any objection to the delayed notice by the State ordinarily should be deemed to have been waived.

*Id.*

In the present case, Defendant represented himself; however, the trial court also appointed elbow counsel from the public defender's office, and Defendant was ultimately sentenced as a persistent offender. The record shows that on June 12, 2012, the State filed an "Omnibus Motion" noting that it contained the State's intent to seek notice of enhanced punishment. The motion was timely served on elbow counsel, and the trial was held on July 9-11, 2012. During a pretrial hearing, the Prosecutor stated the following: "Your Honor, I filed State motions and gave elbow counsel a copy when I filed and I don't know if [Defendant] received them but I can provide him with another copy today." Elbow counsel noted he received "motions explaining that [Defendant] was acting pro se and informed the State that they needed to serve the motions on him. That was several weeks ago." Defendant did not object to the notice or his classification as a persistent offender at the sentencing hearing in which the transcript indicates that elbow counsel was also present. Defendant then raised the issue in his motion for new trial.

At the hearing on Defendant's motion for new trial, the State noted that the enhancement notice was filed on June 12, 2012, and that a copy of Defendant's prior record was included in discovery, which set forth a minimum of ten prior felonies. Additionally, the State noted that Defendant was given a plea offer as a Range Two offender, "which he knew was below his actual range. So, he was on notice with regard to his enhancement factors." Concerning this issue, the trial court held:

> The Court in reviewing the file in the case, which is available to [Defendant], finds that notice of enhancement was properly filed in a timely manner and is contained in the Clerk's file and indicates service was given to Mr. White, who was appointed as elbow counsel, but I find that a proper notice was filed.

[Defendant] - - so that issue is without merit - - objects that he was not given an opportunity to object to the enhancement, well, the enhancement was filed, and we had a sentencing hearing, and he had ample opportunity to object to any of the record that was put before the Court for the purposes of sentencing.

We had a full hearing, and he was given every opportunity to put on proof or to contest any of those convictions, which was not done. So that issue has no merit.

In the present case, the State filed a notice of it intent to seek enhanced punishment and timely served it on elbow counsel. In a pretrial hearing, in which Defendant was present, the Prosecutor noted that the State's motions had been served on elbow counsel. At that time, Defendant did not object or ask for a continuance. Likewise, at the sentencing hearing, Defendant did not object to the notice of enhancement by the State, and he has not shown that he was in any way prejudiced. Defendant is not entitled to relief on this issue.

*Misdemeanor Sentence for Resisting Arrest*

Defendant points out that he was convicted of resisting arrest, which in this case, is a Class B misdemeanor. The trial court imposed a sentence of eleven months, twenty-nine days the maximum sentence for a Class A misdemeanor. *See* Tenn. Code Ann. § 40-35-111(e)(1). The State in its brief acknowledges that Defendant was convicted of a Class B misdemeanor, but sentenced for a Class A misdemeanor. However, the State does not concede that the trial court committed error and at the conclusion of its brief asks that this court affirm the decision of the trial court. A defendant convicted of a Class B misdemeanor is subject to a sentence of not greater than six months. Tenn. Code Ann. § 40-35-111(e)(2). Accordingly, we remand for entry of a corrected judgment to reflect Defendant's conviction for resisting arrest, a Class B misdemeanor, with a sentence of six months, to be served concurrently with Defendant's convictions for aggravated burglary and theft under $500.

After a thorough review of the record, we affirm Defendant's convictions for aggravated burglary, theft over $500, and resisting arrest. We remand the case for entry of a corrected judgment showing a sentence of six months, concurrent with the sentences for aggravated burglary and theft over $500, for the Class B misdemeanor of resisting arrest.

_____
THOMAS T. WOODALL, JUDGE