FILED
10/25/2018
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 24, 2018 at Knoxville

**STATE OF TENNESSEE v. GERMAN CALLES**

**Appeal from the Circuit Court for Rutherford County**
**No. F-74320  David M. Bragg, Judge**

_____

**No. M2017-01552-CCA-R3-CD**

_____

A Rutherford County jury convicted the defendant, German Calles, of one count of attempted voluntary manslaughter, four counts of aggravated assault while acting in concert with others, two counts of attempted especially aggravated robbery, one count of especially aggravated burglary, two counts of employment of a weapon during the commission of a dangerous felony, two counts of conspiracy to commit especially aggravated robbery, and one count of conspiracy to commit especially aggravated burglary, for which the trial court imposed an effective sentence of twenty-six years in confinement. On appeal, the defendant contends the trial court erred when setting the length of his sentences and ordering partial consecutive sentences. Following our review of the record and applicable authorities, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT L. HOLLOWAY, JR., JJ., joined.

Russell N. Perkins, Murfreesboro, Tennessee, for the appellant, German Rene Calles.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Assistant Attorney General; Jennings J. Jones, District Attorney General; and Matthew Westmoreland, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

The evening of February 6, 2014, the victims, Sara and Rick Smith, were watching television at their home in La Vergne, Tennessee, when a woman knocked on their door. Mr. Smith answered, and the woman asked to use the telephone because her car had broken down at a nearby church. Mr. Smith invited the woman inside, she used his cellular phone, and Mr. Smith drove the woman back to the church. When they arrived, the woman's car was not there, so Mr. Smith instead dropped her off at a nearby restaurant.

Mr. Smith returned home, began telling his wife about the strange occurrence, and heard another knock on his door. When he opened the door, Mr. Smith saw a man with a gun, and another man pulled him outside by his shirt. One of the men repeatedly hit Mr. Smith in the head with something metal. Mr. Smith fought with the aggressor in an attempt to keep his wife safe and was eventually shot in the back.

During the altercation, Mrs. Smith went outside to check on her husband and saw him on the sidewalk in front of their home being repeatedly hit in the head by a man. The defendant, who wore sunglasses and a hat, then struck Mrs. Smith in the head with a gun, causing her to collapse and momentarily lose consciousness. When she awoke, Mrs. Smith saw her husband and the man were still fighting. She heard three gunshots, saw a flash of light, and realized her husband had been shot. One of the bullets also hit the victims' vehicle, which was parked in the driveway. Mrs. Smith crawled inside the house, locked the door, and called 911.

While Mrs. Smith was on the phone with the 911 operator, Mr. Smith crawled to the front door, knocked, and Mrs. Smith let him inside. Mr. Smith was bleeding profusely from his head and back. Mrs. Smith was also bleeding from her head and had sustained a mild concussion. The victims were transported via separate ambulances to Vanderbilt University Hospital in Nashville. Mr. Smith underwent emergency surgery and subsequently learned the bullet travelled into his back, through part of a kidney, through his liver, and became lodged in his pelvis. The surgeon could not remove the bullet during the surgery because it was "too risky." Mrs. Smith received numerous stitches in her head and remained at the hospital for monitoring due to the concussion.

As a result of the attack, Mr. Smith has permanent scars to his head, back, and stomach. The right side of Mrs. Smith's face was swollen and bruised for months following the attack. Mrs. Smith also had severe migraine headaches that caused her to miss work but were subsequently controlled via medication, though at the time of sentencing, she continued to have occasional headaches. The attack caused the victims to live much more cautiously than they had previously. Prior to the attack, the victims frequently had friends and family over and cooked dinner for their neighbors. Subsequent to the attack, Mrs. Smith was afraid to leave her home, particularly because

most of the individuals involved remained at-large. Eventually, the victims sold their home and moved to Nashville.

During the ensuing police investigation, officers found an abandoned van close to the victims' home. Inside, officers found masks and two cellular phones. One of the phones belonged to the defendant. When interviewed, the defendant indicated he returned to his apartment complex after working one evening and went to a neighbor's apartment where he met with three men, Flaco, Peluche, and Sicario, and an unnamed woman.[1] The group was discussing committing a robbery and both Sicario and Flaco were armed. The defendant was then given a rope, got into a van, and driven to the victims' house. The defendant was to use the rope to tie-up the victims while the others robbed the house. Upon arrival, two of the men approached the residence while the defendant waited in the back with the rope. After hearing gunshots, the defendant ran down the road, eventually stopping to eat at a restaurant before getting a ride home. The others left in the van. The defendant never told officers he was forced at gunpoint to participate or coerced in any way.

The defendant identified the other assailants by nickname only, gave officers a phone number for only one other participant, and provided officers with an apartment number for the apartment in his complex where he thought the other participants resided. The telephone number provided by the defendant went straight to voicemail each time officers called it, and the apartment had been vacant for at least a month. As of the time of sentencing, the defendant was the only individual to be indicted as a result of the incident.

Following trial, the jury found the defendant guilty of one count of attempted voluntary manslaughter, four counts of aggravated assault acting in concert, two counts of attempted especially aggravated robbery, one count of especially aggravated burglary, two counts of employment of a weapon during the commission of or attempt to commit a dangerous felony, two counts of conspiracy to commit especially aggravated robbery, and one count of conspiracy to commit especially aggravated burglary. The trial court affirmed the convictions and, following a sentencing hearing, imposed an effective sentence of twenty-six years in confinement. When doing so, the trial court articulated the following basis for the sentences imposed:

> In determining the appropriate sentences for this offense or for these offenses, the Court has considered the evidence presented at trial and the sentencing hearing, the presentence report, the principles of sentencing, and arguments made as to sentencing alternatives, the nature and characteristics

---

[1] The defendant did not reveal the woman's name and only knew the men by their nicknames.

of the criminal conduct involved, the evidence and information offered by the parties on the mitigating and enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, the [d]efendant's potential for rehabilitation or treatment.

From all of which, the Court finds as follows. The [d]efendant is found to be a Range I, Standard Offender.

The Court finds the following enhancement factors, which are not themselves essential elements of one or more of these offenses. These offenses involved more than one victim. The personal injuries inflicted upon or the amount of damage to property sustained or taken from the victims in this case was particularly great. That the [d]efendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense for those offenses that do not require that as an element of the offense. And the [d]efendant had no hesitation about committing a crime when the risk to human life was high.

The Court would point out that this was a very serious crime that occurred with some planning and forethought. One individual was sent to scope out the home. And later a group of individuals armed with firearms, possibly other weapons, returned to the home and committed these offenses.

This Court has heard testimony from [the victims], and is happy their injuries, which have been found to be serious, were not more serious. The impact on [the victims] would be hard to comprehend without their testimony.

This Court notes that the [victims] have participated throughout this process. And it's the Court's hope that that will provide some closure for them so that they will be able to move on with their lives, and hopefully regain some of the sense of security that has been lost through the acts of the [d]efendant and those who accompanied him on that night.

Both [the victims] were heavily involved in all aspects of these crimes. Each are found to be victims, as noted by the jury in their verdicts.

Specifically, Mr. Smith has received serious injuries which were the results of the acts of the [d]efendant and his [c]o-[d]efendants in this case, although they have not yet been apprehended.

Mr. Smith was shot and still carries the bullet to this day. He was struck in the back of the head, carries that scar today. He was beaten, drug out of his home, kicked. And the Court is, as previously stated, happy to see he's able to be here today.

Ms. Smith was attacked when she came to assist her husband, and carries the damage from that to this day.

The callousness of those involved, including the [d]efendant in this case, made an impression on the Court during the testimony in this case.

The Court has considered the mitigating factors presented by the [d]efense. Defense suggests that substantial grounds exist tending to excuse or justify the [d]efendant's criminal conduct, although failing to establish a defense.

The [d]efendant has stated previously that he was subject to coercion. That he was confronted by men with guns who required him to accompany them on this crime. The Court does not find the [d]efendant's statements to be credible, nor did the jury.

The [d]efense also urges that the [d]efendant played a minor role in the commission of the offense. Again, not finding the [d]efendant credible, the Court is unable to apply that mitigating factor.

That the [d]efendant assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offense. There's only one person that's ever been identified to be able to be apprehended in this case. And that was the defendant.

The information he supplied has not provided law enforcement with sufficient information for them to be able to apprehend anyone else who was involved in this crime. Although, it is apparent that there were more than just the [d]efendant involved.

Concerning discretionary consecutive sentencing, the Court specifically finds the [d]efendant is a dangerous offender whose behavior indicates little or no regard for human life. And no hesitation about committing a crime in which the risk to human life is high.

All three of the following factors apply. That the circumstances surrounding the commission of the offense are aggravated. The [victims] were targeted. The crimes were planned. The people who committed the crime went with deadly weapons. And when confronted with resistance, committed physical abuse on the victims in this case.

The Court finds that confinement for an extended period of time is necessary to protect society from the [d]efendant's unwillingness to lead a productive life, and the [d]efendant's resort to criminal activity in furtherance of an anti-societal lifestyle.

There's been very little proof concerning the [d]efendant's lifestyle, because he hasn't been in this country long. That can't be held against him.

But the fact that he went to a place where other people were involved, that he participated with those other people in planning this crime, that he accompanied these people to the place where this crime was committed and engaged, did not discourage, did not leave, did not remove himself demonstrates to the Court that he does have an anti-societal lifestyle as it relates to these events.

Further, the Court finds the aggregate length of the sentences reasonably relates to the offenses of which the [d]efendant stands convicted. The jury returned verdicts in 13 counts related to what happened on this night.

Further, the Court would find that an extended sentence is necessary to protect the public against further criminal conduct by the [d]efendant. And that consecutive sentences reasonably relate to the severity of the offenses committed in this case.

The Court has also considered the following in deciding whether to grant or deny an alternative sentence to incarceration. The presentence report; the [d]efendant's physical, mental condition, and the social history as presented in that report and as testified to at trial; the facts and

circumstances surrounding the offenses; the nature and circumstances of the criminal conduct involved.

The Court has previously commented on that. Still finds in ways what happened to be shocking, and certainly not behavior that can be condoned by a civilized society.

The prior criminal history of the [d]efendant or lack thereof, that's already been commented on. The fact that he has very little prior criminal record as far as reflected in our sentencing report.

Previous action and character of the [d]efendant. The fact that he – the Court would have to note that somebody who can engage in the activities that were engaged in on that night and then leave, and even if forced or under duress, for six days never make any report, never discuss, never take any action to assist law enforcement until such time as he's been tracked down is disappointing at best, shameful, and demonstrates a callous disregard for the lives of those who he saw beaten and shot on the night this occurred.

Whether or not the [d]efendant might reasonably be expected to be rehabilitated. The [d]efendant's potential or lack of potential for rehabilitation, including the risk that during the period of probation the [d]efendant would commit another crime.

Whether or not it reasonably appears the defendant would abide by the terms of probation. Whether or not the interests of society in being protected from possible future criminal conduct of the [d]efendant are great. And they are.

The Court is unaware of any measures less restrictive than confinement that have frequently or recently been applied unsuccessfully to the [d]efendant. Whether or not a sentence of full probation would – well, the Court agrees that a sentence of full probation would unduly depreciate the seriousness of the offenses.

The Court further finds that confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses.

The defendant subsequently filed a motion for a new trial, in part challenging the length of his sentence. The trial court denied the motion. This timely appeal followed.

*Analysis*

On appeal, the defendant only challenges the length and construction of his sentences, arguing the trial court improperly applied the statutory enhancement factors, failed to consider the mitigation factors raised by the defendant, and erroneously imposed consecutive sentences. The State contends the trial court properly adhered to the principles of the Sentencing Act, including the application of enhancement and mitigating factors; the trial court properly imposed a within range sentence for each felony; and the imposition of consecutive sentences was appropriate. We agree with the State.

## I.      Length of Sentences

Pursuant to the 2005 amendments to the Tennessee Criminal Sentencing Reform Act of 1989 ("Sentencing Act"), after determining the appropriate sentencing range, trial courts must consider the following factors:  (1) the evidence presented at the trial or sentencing hearing; (2) the presentence report; (3) the principles of sentencing and any arguments regarding sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) any evidence or information presented by the parties as to mitigating and enhancement factors; (6) any statistical information provided by the Tennessee Administrative Office of the Courts regarding sentencing practices for similar offenses; (7) any statement the defendant makes on his own behalf regarding sentencing; and (8) the defendant's potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5); -210(b). The trial court must then impose a within-range sentence that, after considering any evidence of mitigating and enhancement factors presented by the parties, reflects "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. §§ 40-35-103(4); -210. The trial court may only apply enhancement factors "[i]f appropriate for the offense and if not already an essential element of the offense." Tenn. Code Ann. § 40-35-114. To ensure fair and consistent sentencing, the trial court must state the factors it considered on the record and include its rational for imposing the sentence it did. *Id*.

After affording a presumption of reasonableness to the trial court's sentencing determination, this Court reviews challenges to sentence length and the manner in which a sentence is to be served using an abuse of discretion standard. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancement or mitigating factor, the error does not remove the presumption of reasonableness. *Id*. at 709. "[S]o long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute," this Court will uphold the sentencing decision. *Id*. at 709-10. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous.

Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Here, the proof at trial established the victims, Mr. and Mrs. Smith, were the only two people in their home at the time the defendant and his co-conspirators pulled Mr. Smith out of his front door, beat and shot Mr. Smith, hit Mrs. Smith in the head with a gun, and attempted to rob the victims. A Rutherford County jury convicted the defendant of multiple offenses relating to both victims, and the trial court affirmed the convictions. Following a sentencing hearing, the trial court imposed an effective twenty-six year sentence, broken down as follows:

| Count | Convicted Offense | Class: | Merged with: | Sentence Imposed | Victim(s) |
|-------|-------------------|--------|--------------|------------------|-----------|
| 1 | Attempted Voluntary Manslaughter | Class D Felony | | 4 years | Mr. Smith |
| 2 | Aggravated Assault Acting in Concert (serious bodily injury) | Class B Felony | Count 4 | 10 years | Mr. Smith |
| 3 | Aggravated Assault Acting in Concert (serious bodily injury) | Class B Felony | Count 5 | 10 years | Mrs. Smith |
| 4 | Aggravated Assault Acting in Concert (use of a deadly weapon) | Class B Felony | Count 2 | 10 years | Mr. Smith |
| 5 | Aggravated Assault Acting in Concert (use of a deadly weapon) | Class B Felony | Count 3 | 10 years | Mrs. Smith |
| 6 | Attempted Especially Aggravated Robbery | Class B Felony | | 10 years | Mr. Smith |
| 7 | Attempted Especially Aggravated Robbery | Class B Felony | | 10 years | Mrs. Smith |
| 8 | Especially Aggravated Burglary | Class B Felony | | 10 years | Mr. and Mrs. Smith |
| 9 | Employment of a Weapon During Commission of a Dangerous Felony, Attempted Voluntary Manslaughter | Class C Felony | | 6 years | Mr. Smith |
| 10 | Employment of a Weapon During | Class C Felony | | 6 years | Mr. and Mrs. Smith |

| | | | | | |
|---|---|---|---|---|---|
| | Commission of or Attempt to Commit a Dangerous Felony, Especially Aggravated Burglary | | | | |
| 11 | Conspiracy to Commit Especially Aggravated Robbery | B Felony | Count 6 | 10 years | Mr. Smith |
| 12 | Conspiracy to Commit Especially Aggravated Robbery | B Felony | Count 7 | 10 years | Mrs. Smith |
| 13 | Conspiracy to Commit Especially Aggravated Burglary | C Felony | | 6 years | Mr. and Mrs. Smith |

The defendant contends the trial court improperly applied the enhancement factors set forth in Tennessee Code Annotated section 40-35-114(3), "[t]he offense involved more than one (1) victim," and Tennessee Code Annotated section 40-35-114(10), "[t]he defendant had no hesitation about committing a crime when the risk to human life was high." The State asserts that even in the absence of these factors, the trial court appropriately imposed within-range sentences and applied the enhancement factors set forth in Tennessee Code Annotated section 40-35-114(6), "[t]he personal injuries inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great," and Tennessee Code Annotated section 40-35-114(9), "[t]he defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense." We agree with the State.

## A.    Enhancement Factors

### 1.    Multiple Victims

When considering the applicable enhancement factors, the trial court first found, "[t]hese offenses involved more than one victim." Tenn. Code Ann. § 40-35-114(3) (enumerating "[t]he offense involved more than one (1) victim" as the third of twenty-eight advisory enhancement factors). In the context of Tennessee Code Annotated section 40-35-114(3) ("enhancement factor three"), the term "victim" means "'a person or entity that is injured, killed, had property stolen, or had property destroyed by the perpetrator of the crime.'" *State v. Cowan*, 46 S.W.3d 227, 235 (Tenn. Crim. App. 2000) (quoting *State v. Raines*, 882 S.W.3d 376, 384 (Tenn. Crim. App. 1994)). The trial court found the victims sustained serious injuries as a result of the actions of the defendant and his co-conspirators, making them victims within the context of enhancement factor three.

Enhancement factor three, however, is not applicable when the offense for which the defendant was convicted involved a specific, named victim, because in such cases there cannot be multiple victims for a single offense. *State v. Imfeld*, 70 S.W.3d 698, 706 (Tenn. 2002). For this reason, our supreme court has found enhancement factor three does not apply to convictions for aggravated assault, as "there cannot be multiple victims for any one offense of aggravated assault." *Id*. Enhancement factor three is instead appropriate for offenses like arson, where the defendant can only be charged with one offense regardless of the number of victims. *State v. Lewis*, 44 S.W.3d 501, 508 (Tenn. 2001) (holding, "the 'multiple victim' enhancement factor is well-suited to the aggravated arson statute, which does not permit multiple convictions in spite of the fact that multiple persons were victimized by the fire").

The trial court erred when applying enhancement factor three to the defendant's convictions for attempted voluntary manslaughter; aggravated assault acting in concert; attempted especially aggravated robbery; employment of a weapon during commission of a dangerous felony, attempted voluntary manslaughter; and conspiracy to commit especially aggravated robbery. Each offense had one, individually named victim, either Mr. or Mrs. Smith. There were not and could not have been multiple victims for any one of the offenses, so enhancement factor three was not applicable.

The trial court, however, did not err when applying enhancement factor three to the defendant's convictions for especially aggravated burglary; employment of a weapon during the commission of a dangerous felony, especially aggravated burglary; and conspiracy to commit especially aggravated burglary. Especially aggravated burglary is the burglary of a habitation or building wherein the victim suffers serious bodily injury. Tenn. Code Ann. § 39-14-404. "Burglary" includes the entry of a building, without the consent of the owner, with the intent to commit a felony, theft, or assault. Tenn. Code Ann. § 39-14-402(a). The definition of "enter" includes the "[i]ntrusion of any part of the body" into the building. Tenn. Code Ann. § 39-14-402(b). For the purpose of especially aggravated burglary, a "victim" is "any person lawfully on the premises." *Id*. at § 39-14-404(b). Like arson, an individual can be charged with one count of especially aggravated burglary regardless of the number of victims injured. *See State v. Elgene Porter aka "Twin"*, No. M2009-02443-CCA-R3-CD, 2011 WL 915673, at *13 (Tenn. Crim. App. March 14, 2011) *perm. app. denied* (Tenn. May 25, 2011) (concluding, "[c]onspiracy to commit aggravated burglary and aggravated burglary do not include a specific, named victim; thus, enhancement factor (3) applied only to those convictions").

The jury found the defendant and his co-conspirators caused serious bodily injuries to both Mr. and Mrs. Smith, making them both victims within the context of the especially aggravated burglary statute. Consequently, there were two victims to the

single offenses of especially aggravated burglary; conspiracy to commit aggravated burglary; and use of a firearm during the commission of a dangerous felony, especially aggravated burglary. The trial court properly applied enhancement factor three to aggravated burglary and the related offenses.

### 2. High Risk of Harm to Human Life

The defendant additionally challenges the trial court's reliance on the enhancement factor set forth in Tennessee Code Annotated section 40-35-114(10) ("enhancement factor ten"), "the defendant had no hesitation about committing a crime when the risk to human life was high." Tenn. Code Ann. § 40-35-114(10). It is well-established that enhancement factor ten only applies when the defendant's conduct created a high risk to the life of someone other than the victim. *State v. Trent*, 533 S.W.3d 282, 294 (Tenn. 2017) (stating, "the law has been clear for over twenty years that [] enhancement factor ten is applicable only when there is proof that the defendant's conduct in committing the offense created a high risk to the life of someone other than the victim"). Mr. and Mrs. Smith were the only people present at the time the defendant and his co-conspirators attacked and attempted to rob the victims. Enhancement factor ten was not applicable.

### B. Mitigation Factors

The defendant further alleges the trial court erred by failing to apply the applicable mitigating factors. Our review of the record shows the trial court considered and rejected the mitigating factors submitted by the defendant, stating:

> The Court has considered the mitigating factors presented by the [d]efense. Defense suggests that substantial grounds exist tending to excuse or justify the [d]efendant's criminal conduct, although failing to establish a defense.

> The [d]efendant has stated previously that he was subject to coercion. That he was confronted by men with guns who required him to accompany them on this crime. The Court does not find the [d]efendant's statements to be credible, nor did the jury.

> The [d]efense also urges that the [d]efendant played a minor role in the commission of the offense. Again, not finding the [d]efendant credible, the Court is unable to apply that mitigating factor.

That the [d]efendant assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offense. There's only one person that's ever been identified to be able to be apprehended in this case. And that was the defendant.

The information he supplied has not provided law enforcement with sufficient information for them to be able to apprehend anyone else who was involved in this crime. Although, it is apparent that there were more than just the [d]efendant involved.

Like enhancement factors, mitigating factors are merely advisory. Tenn. Code Ann. § 40-35-210(c); *see also Bise*, 380 S.W.3d at 707. Moreover, the weighing of various mitigating and enhancement factors is left to the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008). The trial court found the defendant to be less than credible, so it rejected the mitigating factors raised by him, including the defendant's contentions he played a minor role in the crime, was coerced into participating, and assisted law enforcement with their efforts to apprehend his cohorts. This decision was within the presumption of reasonableness afforded to the trial court. The defendant is not entitled to relief.

## C.     Within-Range Sentences

Our conclusion that the trial court erred when applying enhancement factors three and ten does not invalidate the sentences, as the trial court properly relied on the enhancement factors set forth in Tennessee Code Annotated section 40-35-114(6) ("enhancement factor six") and Tennessee Code Annotated section 40-35-114(9) ("enhancement factor nine"), and the within-range sentences imposed by the trial court were consistent with the purposes and principles of the Sentencing Act. *Bise*, 380 S.W.3d at 709-10. The trial court applied enhancement factor six, "[t]he personal injuries inflicted upon, or the amount of damage to the property sustained by or taken from, the victim was particularly great," Tennessee Code Annotated section 40-35-114(6), because "Mr. Smith was shot and still carries the bullet to this day[,] [] was beaten, drug out of his home, and kicked[,]" and "Mrs. Smith was attacked when she came to assist her husband and carries the damage from that to this day." The trial court then applied enhancement factor nine, "[t]he defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense," only to the offenses that did not require such as an element of the offense. The defendant has not objected to the application of these factors, and based on our review of the record, they were properly applied by the trial court.

- 13 -

The trial court sentenced the defendant as a Range I offender. The trial court then imposed a four-year sentence for attempted voluntary manslaughter, a Class D felony, which was within the mandated two-to-four-year range. *See* Tenn. Code Ann. §§ 39-12-107(a); 39-13-211(b); and 40-35-112(a)(4). The trial court imposed a ten-year sentence for each aggravated assault acting in concert conviction, a Class B felony, which was in the middle of the eight-to-twelve-year range. *See* Tenn. Code Ann. §§ 39-12-302(a); 39-13-102(e)(1)(A); 40-35-112(a)(2). Likewise, the trial court imposed a mid-range, ten-year sentence for each attempted especially aggravated robbery, especially aggravated burglary, and conspiracy to commit especially aggravated robbery conviction, also Class B felonies. *See* Tenn. Code Ann. §§ 39-12-107; 39-13-403(b); 39-14-404; and 40-35-112(a)(2). The trial court sentenced the defendant to the maximum of six-years for conspiracy to commit especially aggravated burglary, a Class C felony. *See* Tenn. Code Ann. §§ 39-12-107(c); Tenn. Code Ann. § 39-14-404(c); Tenn. Code Ann. § 40-35-112(a)(3). Finally, the trial court imposed the mandated minimum six-year sentence for the convictions of employment of a weapon during the commission of a dangerous felony. *See* Tenn. Code Ann. § 39-17-1324(h)(1).

Appellate courts are to uphold the trial court's imposition of a within-range sentence so long as the record demonstrates the sentence length is consistent with the purposes and principles of the Sentencing Act. *Bise*, 380 S.W.3d at 709. The trial court noted that the evidence presented at trial showed the crime was serious, occurred with planning and forethought, involved callousness on the defendant's part, and resulted in serious injuries to both victims. The purposes and principles of the Sentencing Act include: "[e]very defendant shall be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense;" "[c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses;" and "[t]he sentence imposed should be no greater than that deserved for the offense committed." Tenn. Code Ann. §§ 40-35-102(1); 40-35-103(1)(A); and 40-35-103(2). The record reflects the mid-range sentences imposed by the trial court were consistent with these purposes and principles. The defendant is not entitled to relief on this issue.

## II. Consecutive Sentencing

Finally, the defendant challenges the trial court's partial imposition of consecutive sentences, arguing the trial court relied on its finding that "the [d]efendant is a dangerous offender whose behavior indicates little or no regard for human life [] [a]nd no hesitation about committing a crime in which the risk to human life is high," when ordering partially consecutive sentences and that finding was not supported by the evidence presented at trial. The State contends the trial court properly articulated its reasons for imposing partially consecutive sentences on the record, and the record demonstrates the

sentence was otherwise consistent with the purposes and principles of the Sentencing Act. Again, we agree with the State.

When a defendant challenges the length, range, or manner of service of a sentence, this Court reviews the trial court's decision under an abuse of discretion standard, affording a presumption of reasonableness to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *Bise,* 380 S.W.3d at 707. Those purposes and principles include the imposition of consecutive sentences when "justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102(1). The total length of the resulting consecutive sentence "should be no greater than that deserved for the offense committed." Tenn. Code Ann. § 40-35-103(2).

Pursuant to Tennessee Code Annotated section 40-35-115(b), the trial court may order sentences to run consecutively if it finds, by a preponderance of the evidence, any one of the following:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

- 15 -

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b). The Sentencing Act only requires the trial court to find one of the factors applicable in order to impose a consecutive sentence. *State v. Pollard*, 432 S.W.3d 851, 859-62 (Tenn. 2013). However, if the trial court runs sentences consecutively because "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high," then consistent with the purposes and principles of the Sentencing Act, the trial court must also find the imposition of consecutive sentences is "reasonably related to the severity of the offenses committed" and is "necessary in order to protect the public from further criminal acts by the offender." *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995); *see also State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002).

Here, the trial court imposed consecutive sentences because "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." When reaching this determination, the trial court found aggravated circumstances surrounded the offenses. The victims were targeted, the crimes were planned, the people who committed the offenses carried at least one deadly weapon, and the victims were physically abused. As a result, the trial court found "confinement for an extended period of time is necessary to protect society from the [d]efendant's unwillingness to lead a productive life, and the [d]efendant's resort to criminal activity in furtherance of an anti-societal lifestyle;" "the aggregate length of the sentences reasonably relates to the offenses of which the [d]efendant stands convicted;" "an extended sentence is necessary to protect the public against further criminal conduct by the [d]efendant;" and "consecutive sentences reasonably relate to the severity of the offenses committed in this case."

The trial court subsequently ran the sentences for all offenses to which Mr. Smith was a victim concurrent with one another but consecutive to the sentences for the offenses to which Mrs. Smith was a victim, which also ran concurrent with each other.[2] As mandated by statute, the trial court additionally ordered the six-year-sentences for each employment of a firearm during the commission of or attempt to commit a

---

[2] The trial court ran the ten-year sentence for especially aggravated burglary and six-year sentence for conspiracy to commit especially aggravated burglary, offenses victimizing both Mr. and Mrs. Smith, concurrent with the offenses to which Mr. Smith was a victim and consecutive to the offenses to which Mrs. Smith was a victim.

- 16 -

dangerous felony conviction concurrent to one another but consecutive to the other sentences. *See* Tenn. Code Ann. § 39-17-1324(e)(1) ("A sentence imposed for a violation of subsection (a) or (b) shall be served consecutive to any other sentence the person is serving at the time of the offense or is sentenced to serve for conviction of the underlying dangerous felony."). In total, the trial court imposed an effective sentence of twenty-six years, twenty of which were to be served at 30%, and the employment of a weapon convictions to be served at 100%, broken down as follows:

| Count | Convicted Offense | Sentence Imposed | Victim(s) | Concurrent with: | Consecutive to: |
|---|---|---|---|---|---|
| 1 | Attempted Voluntary Manslaughter | 4 years | Mr. Smith | 2, 4, 6, 8, 11, 13 | 3, 5, 7, 9, 10, 12 |
| 2 | Aggravated Assault Acting in Concert (serious bodily injury) | 10 years | Mr. Smith | 1, 4, 6, 8, 11, 13 | 3, 5, 7, 9, 10, 12 |
| 4 | Aggravated Assault Acting in Concert (use of a deadly weapon) | 10 years | Mr. Smith | 1, 2, 6, 8, 11, 13 | 3, 5, 7, 9, 10, 12 |
| 6 | Attempted Especially Aggravated Robbery | 10 years | Mr. Smith | 1, 2, 4, 8, 11, 13 | 3, 5, 7, 9, 10, 12 |
| 8 | Especially Aggravated Burglary | 10 years | Mr. Smith (and Mrs. Smith) | 1, 2, 4, 6, 11, 13 | 3, 5, 7, 9, 10, 12 |
| 11 | Conspiracy to Commit Especially Aggravated Robbery | 10 years | Mr. Smith | 1, 2, 4, 6, 8, 13 | 3, 5, 7, 9, 10, 12 |
| 13 | Conspiracy to Commit Especially Aggravated Burglary | 6 years | Mr. Smith (and Mrs. Smith) | 1, 2, 4, 6, 8, 11 | 3, 5, 7, 9, 10, 12 |

| | | | | | |
|---|---|---|---|---|---|
| 3 | Aggravated Assault Acting in Concert (serious bodily injury) | 10 years | Mrs. Smith | 5, 7, 12 | 1, 2, 4, 6, 8, 9, 10, 11, 13 |
| 5 | Aggravated Assault Acting in Concert (use of a deadly weapon) | 10 years | Mrs. Smith | 3, 7, 12 | 1, 2, 4, 6, 8, 11, 13 |
| 7 | Attempted Especially Aggravated Robbery | 10 years | Mrs. Smith | 3, 5, 12 | 1, 2, 4, 6, 8, 9, 10, 11, 13 |
| 12 | Conspiracy to Commit Especially Aggravated Robbery | 10 years | Mrs. Smith | 3, 5, 7 | 1, 2, 4, 6, 8, 9, 10, 11, 13 |
| 9 | Employment of a Weapon During Commission of a Dangerous Felony, Attempted Voluntary Manslaughter | 6 years | Mr. Smith | 10 | 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 |
| 10 | Employment of a Weapon During Commission of a Dangerous Felony, Especially Aggravated Burglary | 6 years | Mr. and Mrs. Smith | 9 | 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 |

Again, the trial court properly articulated its reasons for imposing partially consecutive, within-range sentences on the record. These reasons were supported by the

evidence presented at trial and during the sentencing hearing, which revealed the defendant participated in the execution of a conspiracy to rob, burglarize, and attack the victims with deadly weapons. As a result, the victim's sustained serious bodily injuries. Despite the defendant's unsubstantial criminal record, the trial court did not err when imposing consecutive sentences after finding the defendant to be an especially dangerous offender. *See State v. William Henry Vaugh, IV.*, No. M2004-01718-CCA-R3-CD, 2006 WL 2380612 (Tenn. Crim. App. Dec. 18, 2006) *perm. app. denied* (Tenn. Dec. 18, 2006) (upholding the trial court's classification of a defendant as a dangerous offender where, despite his lack of a criminal record, due to the egregious nature of the defendant's actions, "the public [wa]s deserving of future protection from [the] [d]efendant"). Given the nature of the offenses committed against the victims, the trial court's imposition of partially consecutive sentences was consistent with the purposes and principles of the Sentencing Act. The defendant's argument to the contrary is without merit, and he is not entitled to relief on this issue.

## *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____

J. ROSS DYER, JUDGE

- 19 -